No. 96-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 76

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAMES LANE,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office,
Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Patricia J. Jordan, Assistant Attorney General;
Helena, Montana

Dennis Paxinos, Yellowstone County Attorney;
Billings, Montana

Submitted on Briefs: October 30, 1997

Decided:    April 7, 1998
Filed:

_____

Justice Jim Regnier delivered the opinion of the Court.

¶1    James Lane appeals from the entry of a nunc pro tunc order entered by the Thirteenth Judicial District Court, Yellowstone County, correcting the written judgment and commitment to conform to the sentence as orally pronounced.  For the reasons stated below, we affirm.

¶2    The dispositive issues on appeal are:

¶3    1.    Did the District Court err in correcting the written judgment by nunc pro tunc order to conform with its oral pronouncement of sentence at Lane's sentencing hearing?

¶4    2.    Did entry of the nunc pro tunc order to correct Lane's sentence violate Lane's rights to due process?

¶5    3.    Did entry of the nunc pro tunc order to correct Lane's sentence constitute double jeopardy?

FACTUAL AND PROCEDURAL BACKGROUND

¶6    James Lane was charged by information in the Thirteenth Judicial District Court, Yellowstone County, with the felony offense of sexual intercourse without consent on March 4, 1994.  Lane appeared with counsel and pled guilty to the offense on November 3, 1994.

¶7    On February 15, 1995, Lane appeared with counsel in District Court for his sentencing hearing.  After sentencing recommendations from both parties, the District Court stated:

> It is the Order and Judgment of this Court that you serve ten years in the Montana State Prison.  It will be a Special Order of this Court that you will not be paroled until Sexual Offender Program Phases I and II are completed.
>
> The Court believes in this case [], based on the testing results and the evaluation that has been done, that there appears to be a high risk of reoffending, which you have verified to the Court by your lack of recognition of the seriousness of this offense this morning.
>
> The Court bases this sentence on the psychological evaluation, the pre-sentence report and the special circumstances and nature of this offense.
>
> (Emphasis added.)

¶8    A minute entry filed on February 15, 1995, by the clerk of the District Court regarding Lane's sentence, provides as follows:

> The Court's sentence is that the defendant be imprisoned for a term of 10 years  in the Montana State Prison.  It is a further order of the Court, that the defendant not be eligible for parole until after he completes Phases I and II of the Sexual Offender Treatment Program.

¶9    Although the transcript and minute entry from the sentencing unquestionably indicate that the District Court required that Lane complete sexual offender treatment before parole, the written judgment filed on February 21, 1995, provided:

> IT IS THE RECOMMENDATION OF THIS COURT that the
> defendant not be eligible for Parole, pursuant to Section 46-18-202,
> Montana Code Annotated, until said defendant has completed both
> Phases I & II of the Sex Offender Treatment Program.

> (Emphasis added.)

¶10   A year later, on March 6, 1996, the court entered a nunc pro tunc order regarding Lane's sentence.  The nunc pro tunc order provides, in its entirety:

> It appearing to the Court that the Judgment heretofore entered
> by the Clerk in [Lane's case] is not a correct memorial of the Judgment
> as rendered and announced by this Court in the particulars hereinafter
> set forth, in that through inadvertence and clerical error the Judgment
> is not a correct memorial as rendered and announced by the Court is
> hereby corrected to conform to the actual Judgment intended,
> announced and rendered by the Court:

>     IT IS ORDERED that JAMES LANE not be eligible for parole
> until the defendant has successfully enrolled in and completed the
> Montana Sex Offender Treatment Program, Phases I and II.

>     In all other respects the Judgment and Order Suspending
> Sentence entered on the 15th day of February, 1995, shall remain
> unchanged.

¶11   In April 1996, Lane was scheduled to have parole considered in his case.  However, the parole board informed him that he would not be considered for parole.  Upon Lane's request for a reason why he would not be considered for parole, an officer from the parole board told Lane by letter of the District Court's nunc pro tunc order.  Before this, Lane had not received any notice of the nunc pro tunc order.

¶12   On July 18, 1996, the clerk of the District Court filed a notice received from Lane indicating that he was appealing the decision in "State v.  Lane, decided Feb. 15th, 1995."  On August 5, 1996, the State filed a response to Lane's notice of appeal, arguing that his appeal was untimely made.

¶13   On September 16, 1996, this Court received Lane's request for court-appointed counsel to represent him in his appeal.  Lane also moved for bond pending appeal.  On September 27, 1996, we remanded to the District Court for a ruling on Lane's motions for appointment of new counsel and for bail pending appeal.  We also granted Lane's request for a continuance for purposes of transmission of the transcript and filing an appeal brief until the State had an opportunity to respond to Lane's motions and the District Court

ruled on said motions.

¶14  Upon receipt of our order, the District Court notified the State and Lane's trial counsel, the Yellowstone County Public Defender's office, and asked both to file responses. Both parties filed responses that suggested they were unaware of what Lane was actually appealing.  The Public Defender's office asked the District Court to appoint the State Appellate Defender to represent Lane with his appeal in order to avoid any conflict of interest claim because the office had represented Lane during trial.  On November 26, 1996, the District Court appointed the State Appellate Defender to represent Lane and set bail at $50,000 pending appeal.

¶15  On April 3, 1997, Lane filed a motion with this Court pursuant to Rule 3, M.R.App.P., to suspend the application of the Rules of Appellate Procedure relative to the time for filing an appeal.  Under Rule 5, M.R.App.P., an appeal in a criminal case must be taken in sixty days. Lane sought to appeal the entry of the nunc pro tunc order filed by the District Court more than a year after the court had imposed sentence.  However, Lane's pro se notice of appeal was not filed within sixty days of entry of the nunc pro tunc order.  On April 16, 1997, the State filed a response objecting to the appeal on the grounds that this Court lacks jurisdiction where a notice of appeal has not been timely filed.

¶16  On May 1, 1997, we granted Lane's motion to suspend the sixty-day filing requirement of Rule 5(b), M.R.App.P., and permitted Lane to file a notice of appeal of the District Court's nunc pro tunc order.

¶17  Lane now appeals, arguing that the District Court, by way of its nunc pro tunc order, erroneously modified his sentence and violated a number of his rights.

ISSUE 1

¶18  Did the District Court err in correcting the written judgment by nunc pro tunc order to conform with its oral pronouncement of sentence at Lane's sentencing hearing?

¶19  At the sentencing hearing, the District Court clearly imposed a condition of ineligibility for parole until Lane had completed both phases of sexual offender treatment at prison.  However, the written judgment made this condition a recommendation.  Over a year later, this conflict between the oral pronouncement of sentence and the written judgment was called to the District Court's attention.  By entry of a nunc pro tunc order, the District Court stated that its written judgment was in error and corrected it to conform to the oral pronouncement.

¶20  Lane, relying on precedent established by this Court in State v. Enfinger (1986), 222 Mont. 438, 722 P.2d 1170, argues that the written version is the final, valid judgment that can not be amended by means of a nunc pro tunc order.  Moreover, Lane contends that the District Court's amendment of the sentence in the written judgment and commitment constituted double jeopardy and violated his constitutional and statutory rights to be present at any sentencing proceeding and be represented by counsel.  Furthermore, Lane

argues, the entry of the nunc pro tunc order violated his right to due process.

¶21  The State counters that it is within the District Court's inherent power to correct an  error in the record at any time by entry of a nunc pro tunc order. The State also asserts that the District Court has authority under § 46-18-117, MCA, to correct an erroneous sentence at any time.  However, the State, ignoring the precedent established by Enfinger, states that the oral sentence, not the written judgment, controls.  The State cites other jurisdictions for this proposition, but fails to offer any reason why this Court should overrule Enfinger and its progeny and hold that the oral pronouncement of sentence should constitute the final, valid judgment.

          Oral Pronouncement v. Written Judgment

¶22  We begin by focusing on the conflict that existed between the District Court's oral pronouncement at the sentencing hearing on February 15, 1995, and the written judgment filed on February 21, 1995.  Lane and the State disagree as to what constitutes a final valid, judgment--the terms and conditions as orally announced by the sentencing court, or the final, written judgment filed with the clerk of court.

¶23  In Enfinger, the defendant was convicted of mitigated deliberate homicide at trial. The defendant was sentenced and remanded to the sheriff for delivery to Montana State Prison.  Later that same day, the court brought Enfinger back into court for further proceedings because the judge had earlier failed to state his reasons for imposing sentence and it was necessary for him to do so.  In the second hearing, the judge designated the defendant a dangerous offender.  After the second hearing, a judgment was reduced to writing and filed with the court.

¶24  On appeal, Enfinger argued that the District Court, in designating him a dangerous offender, unconstitutionally subjected him to double jeopardy by enhancing his punishment after the court had sentenced him in a previous proceeding.  We noted that the first sentence  pronounced by the court, was not reduced to writing, signed by the judge, or filed with the clerk of the court. In rejecting the defendant's argument, we held that the oral sentence first pronounced by the court was not a valid, final judgment.  We relied on and quoted from a New Mexico case that held "[i]t is well established that an oral ruling by the trial court is not a final judgment, and that the trial court can change such ruling at any time before the entry of written judgment." Enfinger, 222 Mont. at 444, 722 P.2d at 1174 (quoting  State v. Diaz (1983), 100 N.M. 524, 673 P.2d 501, 502, cert. denied (1984), 469 U.S. 1016, 105 S. Ct. 429, 83 L. Ed. 2d 356).

¶25  In State v. Wirtala (1988), 231 Mont. 264, 752 P.2d 177, we relied on Enfinger and held that "[t]he oral sentence first pronounced by the District Court did not constitute a final judgment.  A trial court remains free to modify such a ruling until such time as it is reduced to writing, signed by the district judge and filed with the court." Wirtala, 231 Mont. at 270, 752 P.2d at 181 (citation omitted).  See also State v. Mason (1992), 253 Mont. 419, 833 P.2d 1058 (holding that defendant was not placed in double jeopardy when he was later returned to the courtroom on the same day for the trial court to amend its

oral pronouncement and designate him as a dangerous offender because the oral judgment was not a final, valid judgment).

¶26 Subsequently, in State v. Graveley (1996), 275 Mont. 519, 915 P.2d 184, we were faced with resolving a conflict between the oral pronouncement at sentencing and the written judgment and commitment. At the hearing, the court sentenced Graveley "to a period of 40 years with the Department of Corrections, the first ten years of that sentence will be placed in a prison environment similar to that of the Montana State Prison." However, when the court issued its written judgment and commitment, it stated that Graveley was

> committed to the Montana Department of Corrections and Human Services for a period of forty years (40) years for placement that may include Montana State Prison . . . .
>
> It is the recommendation of this Court that defendant Graveley serve a portion of this sentence in a prison environment. The Montana Department of Corrections and Human Services may allow additional good time if it deems appropriate for parole eligibility.

¶27 On appeal, Graveley argued that the written judgment must conform to the oral pronouncement of sentence. He argued that the written judgment had the effect of resentencing him after he had already started serving his sentence and, thus, violated his due process rights and double jeopardy protections. The oral sentence, he argued, was in essence a ten-year sentence with an additional thirty-year sentence suspended. The written judgment, however, was for forty years, possibly less at the discretion of the Department of Corrections. The State responded to Graveley's argument by relying on Enfinger and contending that it was "well established in Montana that an oral pronouncement of judgment is not a final judgment and may be changed at any time prior to entry of a written judgment."

¶28 In evaluating Graveley's claim, we noted that the District Court did not state in its written judgment that the sentence pronounced in open court was either illegal or erroneous and, therefore, could not be corrected pursuant to § 46-18-117, MCA. Rather than basing our decision on Enfinger and holding that the written judgment was final, we held that Graveley was not prejudiced by the court's written judgment varying from the orally pronounced sentence. Although the court should not have altered the written judgment from its oral pronouncement of sentence, we concluded that the error was harmless.

¶29 The Court's opinion in Graveley provoked a strongly worded dissent which focused on the conflict between this Court's approach to the finality of a sentence and the federal position. "To the extent that Enfinger, Wirtala, and Mason hold that a written sentence can alter the terms of an oral sentence which the defendant has already begun to serve, they fundamentally contradict Montana statutory law and federal law regarding the finality of sentences." Graveley, 275 Mont. at 527, 915 P.2d at 189 (Leaphart, J., dissenting).

¶30 Lane's case, like Graveley's, raises an important question regarding the

sentencing of criminal defendants. Under Montana law, which sentence--the oral pronouncement or the written judgment and commitment--is the legally effective sentence, controlling for the purpose of finality? A review of both Montana statutory law and federal precedent, leads this Court to conclude that holding the oral pronouncement of sentence to be the legally effective sentence is more consistent with our constitutional and statutory provisions.

¶31 The right of the criminal defendant to be present in the courtroom has its source in the confrontation clause of the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution, which states, in relevant part, "[i]n all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel." The purpose of the right of presence is to: (1) assure defendants the opportunity to observe, in most cases, all stages of the trial "in order to prevent the loss of confidence in courts as instruments of justice which secret trials would engender," and (2) protect the integrity and reliability of courtroom procedures by guaranteeing the defendant the opportunity to aid in his defense. United States v. Gregorio (4th Cir. 1974), 497 F.2d 1253, 1258-59, cert. denied, (1974), 419 U.S. 1024, 95 S. Ct. 501, 42 L. Ed. 2d 298.

¶32 The following Montana statutes require the defendant's presence when his sentence is pronounced:

46-16-121. Felony offenses. (1) . . . the defendant in all cases in which a felony is charged must be present at . . . sentencing . . . .

46-16-123. Absence of defendant on receiving verdict or at sentencing. . . .
(2) In all felony cases, the defendant shall appear in person when . . . the sentence is imposed unless . . . .

46-18-115. Sentencing hearing--use of two-way electronic audio-video communication. Before imposing sentence . . . the court shall conduct a sentencing hearing, without unreasonable delay, as follows:
(1) The court shall afford the parties an opportunity to be heard on any matter relevant to the disposition, including the applicability of sentencing enhancement provisions, mandatory minimum sentences, persistent felony offender status, or an exception to these matters.
. . . .
(3) . . . the court shall address the defendant personally to ascertain whether the defendant wishes to make a statement and to present any information in mitigation of punishment or reason why the defendant should not be sentenced. If the defendant wishes to make a statement, the court shall afford the defendant a reasonable opportunity to do so. . . .
(4) . . . (c) . . . if the victim's statement includes new material facts upon which the court intends to rely, the court shall allow the defendant adequate opportunity to respond and may continue the sentencing hearing if necessary. . . . .
(6) In felony cases, the court shall specifically state all reasons for the sentence, including restrictions, conditions, or enhancements imposed, in open court on the record and in the written judgment.

¶33  These statutes implement the Sixth Amendment and Article II, Section 24, of the Montana Constitution, allowing the defendant to be present and giving him an opportunity to respond before the trial court imposes its sentence.    A defendant's only opportunity to respond is at the sentencing hearing before the sentence is orally pronounced.   There is no need for a defendant to be present when the written judgment and commitment is handed down and filed with the clerk of court because, in most cases, the written judgment and commitment mirrors what was orally pronounced as the sentence at the sentencing hearing.   However, if the written judgment and commitment conflicts with the oral pronouncement of sentence and is the legally effective sentence, the defendant has then been sentenced in absentia, violating his statutory right to be present pursuant to §§ 46-16-121(1), -123(2), and 46-18-115, MCA.   "Our cases holding that an oral sentence can be altered or amended by a subsequent written sentence imposed out of the presence of the defendant, contradict our statutory scheme, are, arguably, unconstitutional and directly oppose the federal authority they purport to invoke." Graveley, 275 Mont. at 528, 915 P.2d at 190. (Leaphart, J., dissenting).

¶34  In stating that the oral pronouncement is not the final, valid judgment in Enfinger, we relied on United States v. DiFrancesco (1980), 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328, and stated that "[t]he practice in the federal courts seems to support our decision."  Enfinger, 222 Mont. at 445, 722 P.2d at 1175.   In  DiFrancesco, the United States Supreme Court did state "the established practice in the federal courts [is] that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence."  DiFrancesco,  449 U.S. at 134, 101 S. Ct. at 436, 66 L. Ed. 2d at 344.   DiFrancesco held that under certain conditions set forth by statute, the government could appeal the sentence of a convicted defendant without violating the Double Jeopardy Clause of the United States Constitution.   In other words, the defendant had no expectation of finality until the time allowed for the government to appeal had expired.   However, DiFrancesco did not address whether the oral pronouncement of sentence or the written judgment was the legally effective sentence or which was controlling with regard to the finality of a sentence.

¶35  In fact, the established practice of the federal courts is that the oral pronouncement of sentence is controlling for the purposes of finality. Regarding the finality of sentences, the Ninth Circuit held:
     "The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant."  United States v. Munoz-Dela Rosa, 495 F.2d 253, 256 (9th Cir.1974).  See United States v. Villano, 816 F.2d 1448, 1451-52 & n. 5 (10th Cir. 1987) (en banc).  It is the words pronounced by the judge at sentencing, not the words reduced to writing in the judge's Judgment/Commitment Order, that constitute the legal sentence.

United States v. Bergmann (9th Cir. 1988), 836 F.2d 1220, 1221.

¶36  The Ninth Circuit recognized the importance of protecting the rights of

a criminal defendant during sentencing against double jeopardy.  In Munoz-Dela Rosa, the Ninth Circuit emphasized that the oral pronouncement of a sentence must control, even if contrary to the trial judge's intent:

> All acknowledge that judges are human and may misstate their intention at the time of sentencing. The instant case presents very strong evidentiary support for a holding that the district judge did in fact 'misspeak' himself at the time Appellant was sentenced.  Yet . . . the interests of justice, in the light of constitutional double jeopardy protections and the defendant's right to be present at the time of sentencing . . . and to speak on his own behalf . . . require strict adherence to the axiom that an unambiguous oral pronouncement of a legal sentence must control.

> United States v. Munoz-Dela Rosa (9th Cir. 1974), 495 F.2d 253, 256.

¶37  In United States v. Villano (10th Cir. 1987), 816 F.2d 1448, a judgment and commitment order, signed the same day as the sentencing proceeding, was different from the oral pronouncement of sentence. Three years later, the defendant moved to correct the clerical mistake, arguing that the oral sentence pronounced by the judge should control over the commitment order.  The Tenth Circuit held that the legally effective sentence is the oral pronouncement and that the written judgment and commitment is mere evidence of the oral sentence.  Villano, 816 F.2d at 1452.  The true function of the written judgment is to help clarify an ambiguous oral sentence by providing evidence of what was stated at sentencing.  Villano, 816 F.2d at 1452.   Villano clearly sets forth the practice followed by the federal courts.

¶38  Under the federal rules, the Tenth Circuit stated that a change to make the written judgment rather than the oral sentence final

> would endanger the right to be present at sentencing.  Fed.R.Crim.P. 43(a) mandates that "[t]he defendant shall be present . . . at the imposition of sentence. . . ."  Rule 43 has its source in the confrontation clause of the sixth amendment and the due process clause of the fifth and fourteenth amendments.  Although it is not an absolute right . . . it is fundamental to the entire law of criminal procedure.  A defendant is present only when being sentenced from the bench.  Thus, a defendant is sentenced in absentia when the judgment and commitment order is allowed to control when there is a conflict.

> The imposition of punishment in a criminal case affects the most fundamental human rights:  life and liberty.  Sentencing should be conducted with the judge and defendant facing one another and not in secret.  It is incumbent upon a sentencing judge to choose his words carefully so that the defendant is aware of his sentence when he leaves the courtroom.

> Villano, 816 F.2d 1452-53 (citations omitted).

¶39  Furthermore, a substantial number of the federal circuit courts and state supreme courts subscribe to the principle that when a conflict exists between a court's unambiguous oral pronouncement of sentence and a written judgment, the oral pronouncement, as correctly reported, must control.  For

example, the Ninth Circuit has repeatedly held that the oral pronouncement, as correctly reported, controls over the written judgment if the two conflict. See United States v. Garcia (9th Cir. 1994), 37 F.3d 1359, 1368, cert. denied (1995), 514 U.S. 1067, 115 S. Ct. 1699, 131 L. Ed. 2d 562; United States v. Hicks (9th Cir. 1993), 997 F.2d 594, 597; Munoz-Dela Rosa, 495 F.2d at 256.

¶40  After  review of our statutory sentencing framework and mindful of the constitutional protections afforded criminal defendants, we now hold that the sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment.  Accordingly, the written judgment and commitment will serve as evidence of the sentence orally pronounced.  Adopting this interpretation is more consistent with Montana's constitutional and statutory provisions that allow for a defendant to be present at sentencing and be afforded an opportunity to respond at sentencing.

¶41  Consequently, State v. Enfinger, 722 P.2d 1170, State v. Mason, 833 P.2d 1058, State v. Wirtala, 752 P.2d 177, State v. Graveley, 915 P.2d 184, and any other Montana case that has held that the written judgment and commitment is the valid, final judgment or legally effective sentence, rather than the oral pronouncement of sentence in the presence of the defendant, are hereby overruled to that extent.

Nunc Pro Tunc Order

¶42  We now turn to the case at bar.  Lane argues that the District Court erred in entering the nunc pro tunc order correcting the written judgment and commitment to conform to the oral pronouncement of sentence.

¶43  At the sentencing hearing on February 15, 1995, Lane appeared and was represented by counsel.  Both Lane's counsel and an attorney representing the State made sentencing recommendations to the District Court.  Lane addressed the District Court before his counsel made a sentencing recommendation.  After hearing both sides present their sentencing recommendations but before pronouncing sentence, the District Court addressed Lane:

    THE COURT:  James Lane, do you have any further cause to
    show why judgment should not be pronounced at this time?

    [LANE'S COUNSEL]:  We do not, Judge.

    THE COURT:  It is the Order and Judgment of this court that
    you serve ten years in the Montana State Prison.  It will be a
    Special Order of this court that you will not be paroled until
    Sexual Offender Program Phases I and II are completed.

¶44  However, when the written judgment and commitment was filed,  the requirement that Lane complete Phases I and II of the Sexual Offender Treatment Program before he would become eligible for parole was recorded only as a recommendation by the District Court.
When the District Court was informed of this discrepancy, it corrected the written judgment and commitment to conform to its oral pronouncement at the

sentencing hearing by means of a nunc pro tunc order.  The District Court stated that the mistake was made "through inadvertence and clerical error." The entry of the nunc pro tunc order was to conform the written judgment and commitment "to the actual Judgment intended, announced and rendered by the [District] Court" at Lane's sentencing hearing.

¶45  A nunc pro tunc order is a district court order made now of something which was actually done previously to have effect as of the former date. Black's Law Dictionary 1069 (6th ed. 1990).  Judgments or records of district courts may be modified or amended by the entry of  nunc pro  tunc orders or amended judgments to remedy certain clerical errors.  State ex rel. Kruletz v. District Court (1939), 110 Mont. 36, 39-40, 98 P.2d 883, 885.  "Every court has the inherent right to correct clerical errors."  Dahlman v. District Court, Seventeenth Judicial Dist. (1985), 215 Mont.  470, 474, 698 P.2d 423, 425. While a District Court may correct clerical errors to make the record speak the truth as to what was actually decided, "[t]he error must be apparent on the face of the record to insure that the correction does not in effect set aside a judgment actually rendered nor change what was originally intended."  State v. Owens (1988), 230 Mont. 135, 138, 748 P.2d 473, 474.

¶46  Furthermore, outside of a court's inherent authority to correct clerical errors, a district court may modify or correct a sentence pursuant to § 46-18-117, MCA.
When a valid sentence has been pronounced, the court imposing that sentence has no jurisdiction to modify or change it, except as provided by statute.  State v.  Fertterer (1993), 260 Mont.  397, 860 P.2d 151.  The only statutory provision that allows a court to modify a sentence is provided at § 46-18-117, MCA, which states:

> Correction of sentence. The court may correct an erroneous
> sentence or disposition at any time and may correct a sentence
> imposed in an illegal manner within 120 days after the sentence
> is imposed or after remand from an appellate court.

¶47  Section 46-18-117, MCA, is based upon Rule 35 of the Federal Rules of Criminal Procedure.  The federal rule has been recognized as providing "the appropriate remedy to make the judgment and commitment papers conform to the sentence pronounced orally." 3 Wright, Federal Practice and Procedure § 611, at p.  527 (1982).

¶48  The District Court's written judgment and commitment clearly conflicted with the oral pronouncement because it only recommended rather than required that Lane complete both Phases I and II of the Sexual Offender Treatment Program before he would be eligible for parole.  As discussed above, this Court now concludes that the oral pronouncement of sentence is the legally effective sentence and that the written judgment and commitment serves as evidence of the sentence orally pronounced.  Also, we conclude that in the event of a conflict between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement controls.  In the event of a conflict, we conclude that a district court may correct an error in a written judgment and commitment by a nunc pro tunc order to accurately reflect what had been orally pronounced at the sentencing hearing pursuant to

§ 46-18-117, MCA.

¶49   In the present case, the record affirmatively demonstrates that Lane was to remain ineligible for parole until he had completed both Phases I and II of Sexual Offender Treatment Program at the prison.  The written judgment and commitment contained a clerical error causing it to conflict with the sentence the District Court orally pronounced at the hearing.  Although the District Court did not cite § 46-18-117, MCA, in its nunc pro tunc order, the statute provides authority for the correction. Therefore, the correction of the clerical error was an appropriate nunc pro tunc entry and we find no error.

ISSUE 2

¶50   Did entry of the nunc pro tunc order to correct Lane's sentence violate Lane's rights to due process?

¶51   Lane argues that the correction of his sentence by the nunc pro tunc order violates the Due Process Clause of the United States Constitution, and Article II, Section 17, of the Montana Constitution.  Both provide that no person shall be denied liberty without due process of the law.  Lane contends that his eligibility for parole was delayed by the entry of the nunc pro tunc order.  He contends that it is fundamentally unfair for the written judgment and commitment to be enhanced more than thirteen months after he had began serving his sentence.

¶52   Lane's argument is based upon dicta in Breest v. Helgemoe (1st Cir. 1978), 579 F.2d 95, cert. denied (1978), 439 U.S. 933, 99 S. Ct. 327, 58 L. Ed. 2d 329, which provided:

> [T]he power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit.  When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope.  As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance. . . . After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.

Breest, 579 F.2d at 101.

¶53   However, the First Circuit has clarified Breest by limiting due process violations to cases where the prisoner's expectations of being released have been realized and the correction of the sentence results in a tangible detriment or concrete injury.  Lerner v. Gill (1st Cir. 1985), 751 F.2d 450, 459, cert. denied (1985), 472 U.S. 1010, 105 S. Ct. 2709, 86 L. Ed .2d 724;  Littlefield v. Caton (1st Cir. 1988), 856 F.2d 344, 348.  In Littlefield, the First Circuit held that the revocation of illegally awarded "good time credits" which had accrued over a period of nine years did not violate the due process rights of a prisoner who had not yet been released, noting:

> [W]e have made clear that misdirection of this sort must 'involve
> [ ] prejudice and harm beyond frustrated expectations' to be
> constitutionally redressable.  The mere passage of time--even,
> as here, the passage of many years--does not per se import the
> existence of such prejudice and harm. Something
> more--something specific, some concrete injury--must be
> shown.

Littlefield, 856 F.2d. at 348 (quoting Lerner, 751 F.2d at 459).  In both
Littlefield and  Lerner, the First Circuit was influenced by the fact that,
although the correction of the sentences left the prisoners with dashed hopes,
they were essentially "no worse off than . . . had the error not been made."
Littlefield, 856 F.2d at 349;  Lerner, 751 F.2d at 459.

¶54  Although we have concluded that Lane's written judgment and
commitment was in error because it did not conform to the oral
pronouncement of sentence, we next evaluate Lane's due process claim to
determine if Lane had acquired a vested interest in an erroneous sentence.  We
recognize that there must be some time limit after which the State cannot
reopen a matter after a final decision and substantial lapse in time.  In the
present case, however,  we conclude that the entry of the nunc pro tunc order
correcting Lane's sentence was neither fundamentally unfair nor unfair because
Lane had gained an indefeasible expectation of finality.  Furthermore, Lane is
unable to establish a concrete injury or prejudice as a result of the nunc pro
tunc order.  The parole board may very well have followed the judge's
recommendation provided in the written order and required Lane to complete
the sexual offender programs before considering his parole eligibility.  The
District Court inadvertently erred in stating in the written judgment and
commitment that it was a recommendation rather than a requirement that Lane
complete Phases I and II of the Sexual Offender Treatment Program before he
would be eligible for parole.  The record contains no hint of any improper
motive on the part of the District Court in issuing the nunc pro tunc order.  We
also note that Lane was still in prison when he learned of the nunc pro tunc
order.  Therefore, we find no due process violation here.

ISSUE 3

¶55  Did entry of the nunc pro tunc order to correct Lane's sentence
constitute double jeopardy?

¶56  When a district court corrects a written judgment and commitment to
conform to the one it originally intended, double jeopardy does not apply to
bar the correction.  Owens, 230 Mont. at 137, 748 P.2d at 474. As discussed
above, we now conclude that the oral pronouncement of sentence is the legally
effective sentence.  In Lane's case, the entry of the nunc pro tunc order served
to correct the written judgment and commitment to conform to the oral
pronouncement of sentence.  Therefore, we find no double jeopardy here.

¶57  Affirmed.

/S/  JIM REGNIER

We Concur:

/S/  J. A.  TURNAGE
/S/  W. WILLIAM LEAPHART
/S/  WILLIAM E. HUNT, SR.


Justice James C. Nelson specially concurs.


¶58  I concur in the result and in the analysis of our opinion.  I write separately only to suggest that, in my view, there are ramifications flowing from our decision that may wind up being traps for the unwary prosecutor, defendant and sentencing judge.  While these observations are properly not included in the majority opinion and are admittedly dicta,  nonetheless, I believe that an ounce of prevention is worth a pound of cure, and I offer these observations in that context for whatever worth they may have.

¶59  First, in criminal cases an appeal from a judgment must, generally, be taken within 60 days.  Rule 5(b), M.R.App.P.  " 'Judgment' means an adjudication by a court that the defendant is guilty or not guilty, and if the adjudication is that the defendant is guilty, it includes the sentence pronounced by the court."  Section 46-1-202(10), MCA (emphasis added).   " ' Sentence' means the judicial disposition of a criminal proceeding upon a plea, verdict, or finding of guilty."  Section 46-1-202(24), MCA.  Given our decision in the case at bar that "the sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment," it  is my view that the time for filing the notice of appeal in a criminal case will now run from the oral pronouncement of sentence and not from the entry of the written judgment and sentence.  Defense counsel or a defendant who delays in filing a notice of appeal on the assumption that the appeal time does not start to run until the written judgment is issued by the court and filed may well find an otherwise meritorious appeal time-barred.

¶60  In this regard, I note that the last sentence of § 46-18-116, MCA, states that "[t]he judgment must be signed and entered on the record."  While this statute requires that at some point the defendant's guilt or innocence, the adjudication, and the disposition of his or her case be reduced to a writing which is signed and filed of record, there is nothing in this statute, again in my view, that would affect the finality of the controlling oral pronouncement of the judgment and sentence for purposes of appeal.

¶61  Second, it should also be obvious that to the extent that the written judgment differs from the oral pronouncement of sentence, the defendant will likely have good grounds for appeal.  I suggest that judges are going to have to be especially careful to specifically articulate on the record each and every aspect, term, requirement and condition of the sentence intended.  Imposing "stock" or "standard" conditions and requirements by reference to some other document, standing order or customary practice or leaving to the prosecutor the task of inserting those in the written judgment, may be a risky practice, indeed.

¶62   Third, in those jurisdictions where the county attorney or deputy drafts the written judgment following the sentencing hearing, the prosecutor is, likewise, going to have to be extremely careful to incorporate in the written judgment only those terms, requirements and conditions orally imposed and actually pronounced by the court.  Adding "stock" or "standard" conditions that the court usually imposes but may not, in all instances, specifically articulate, will likely be grounds for appeal.

¶63   Fourth, it seems to me that in order to best avoid this risk of variance between the sentence orally pronounced and the written judgment, the sentencing judge should simply hear the evidence and take under advisement the recommendations of the prosecution and defense at the sentencing hearing, but not pronounce sentence at that time.  Once the written judgment is drafted in accordance with the sentencing court's wishes, the defendant can then be brought back into open court with counsel, and the judge can simply pronounce sentence by reading the entirety of the written judgment and sentence.

¶64   Finally, it should be obvious to both defendants and prosecutors that, under the law as presently written and our decision in the case at bar, if the oral pronouncement of sentence is not correct or is incomplete, the time for dealing with the error is at the  time the sentence is orally pronounced and while the defendant is in open court.  Attempting to "fix" the error later in the written judgment will no longer work.

/S/   JAMES C. NELSON


Justice Karla M. Gray concurs in the foregoing special concurrence.


/S/   KARLA M. GRAY

Justice Terry N. Trieweiler dissenting.

¶65   I dissent from the majority opinion.  I would reverse the order of the District Court which substantively amended its written judgment nearly thirteen months after James Lane began serving his sentence.  Lane was not given notice of the amendment before it was entered or after it was entered, and first learned of it when he was advised if its effect by the parole board. Few practices could more clearly offend traditional notions of due process and the prohibition against double jeopardy.

¶66   We have repeatedly, and for good reason, held that the written judgment is the final judgment in criminal proceedings which establishes the terms of a defendant's sentence and that an oral sentence is not a final judgment.  In State v. Enfinger (1986), 222 Mont. 438, 722 P.2d 1170, we held that:

    The first sentence pronounced by the court, which omitted the
 dangerous offender designation, was not reduced to writing, signed by
  the judge, or filed with the court.  Thus, that sentence was not a final

judgment. "It is well established that an oral ruling by the trial court is not a final judgment, and that the trial court can change such ruling at any time before the entry of written judgment." State v. Diaz (1983), 100 N.M. 524, 673 P.2d 501, 502. This Court has never explicitly adopted the Diaz rule but we implicitly stated the same rule in Wilkinson v. State (Mont. 1983), [205 Mont. 237,] 667 P.2d 413, 40 St.Rep. 1239. In Wilkinson we stated:

> "[o]nce a valid sentence is imposed, the court lacks jurisdiction to vacate or modify it unless specifically authorized by statute." (Citations omitted.)

> ". . . there is no way for the judge to change his decision, after the filing of the judgment." (Emphasis added.)

667 P.2d at 414. The oral sentence first pronounced by the lower court was not a final, valid judgment. Thus, that sentence did not subject appellant to a first "jeopardy." There was no "former" jeopardy under the first oral sentence because it was not final. Therefore, there can be no double jeopardy. Petition of Williams (1965), 145 Mont. 45, 399 P.2d 732.

Enfinger, 222 Mont. at 444-45, 722 P.2d at 1174.

¶67 We followed Enfinger in State v. Wirtala (1988), 231 Mont. 264, 270, 752 P.2d 177, 181, and State v. Mason (1992), 253 Mont. 419, 425, 833 P.2d 1058, 1061. We ignored those decisions and misstated the rule regarding oral versus written judgments in State v. Graveley (1996), 275 Mont. 519, 524, 915 P.2d 184, 187. To the extent that Graveley is inconsistent with the three prior cases, I would overrule Graveley.

¶68 However, it makes no sense to overrule our repeated precedent in order to save the oral judgment of the District Court in this case. A rule which elevates an oral statement of the district court over a judgment which is reduced to writing, signed by the judge, and filed with the clerk of court is fraught with the potential for human error and, as sure as night follows day, will lead to endless appeals.

¶69 The modern criminal sentence is a complex matter. Part of it may be deferred or suspended based on numerous conditions; there may be a mandatory minimum sentence or exceptions to the mandatory minimum sentence; and the court may be required to determine that the defendant is a persistent felony offender or that the sentence should be enhanced for some other reason, such as the use of a weapon or the danger the defendant presents to the community. All of these considerations are more likely to be made accurately and reliably after the sentencing judge has had an opportunity to reflect on them and reduce his or her thoughts to writing with the assistance of counsel for the parties. Our cases, in fact, document that a district court's oral sentence is frequently not the sentence that was intended. In Enfinger, the district court forgot to orally designate the defendant a dangerous offender. See Enfinger, 222 Mont. at 444, 722 P.2d at 1174. In Wirtala, the district

court forgot to orally declare the defendant ineligible for parole during a portion of his sentence.  See Wirtala, 231 Mont. at 269, 752 P.2d at 180.  In Mason, the district court overlooked the condition of sexual offender and alcohol treatment programs as part of its oral sentence.  See Mason, 253 Mont. at 425, 833 P.2d at 1061.  Since judges are human, we are likely to see a further series of similar human errors in the future based on today's change of course by the majority.

¶70  The majority bases its decision to elevate an oral sentence over a written sentence on the statutory and constitutional right of a defendant to be present at the time he or she is sentenced.  There is no explanation, however, in the majority opinion of why a defendant cannot be present when a written sentence is imposed.  In fact, the concurring opinion of Justice Nelson, with which a majority apparently concurs, suggests this very practice.  While concurring that the Sixth Amendment and our statutes require a defendant's presence at the time of sentencing and, therefore, that the oral sentence be final, Justice Nelson then suggests, in order to avoid the "risky practice" of issuing oral sentences as they have been issued in the past, that the sentencing judge hear the evidence and arguments of counsel, but not pronounce sentence at the time of the sentencing hearing, and instead wait until a written judgment is drafted.  He suggests that the defendant then be brought back into open court and that the judge pronounce the sentence by reading the entirety of the written judgment and sentence.  How is that process any different as a practical matter than retaining our current rule regarding the finality of a written sentence, but requiring a defendant be present when the written sentence is entered?  In effect, the majority has held, in order to affirm what the District Court did in this case, that contrary to our prior decisions, the oral sentence of the district court is final, rather than the written sentence, because a defendant has to be present at the time of sentencing; but, since the oral sentence is inherently unreliable, that the district court should wait until his or her thoughts can be reduced to writing and then bring the defendant back into court so that the oral sentence can actually be read from the functional equivalent of a written judgment.  If there is some thread of logic to this new approach, as expanded on in the concurring opinion, I have to admit that it has been lost on me.

¶71  Because I conclude that the better reasoned rule elevates the written sentence over the oral sentence of the District Court, and further conclude that the District Court's March 6, 1996, order substantively altered and enhanced its February 21, 1995, sentence and judgment nearly thirteen months after the defendant had begun serving his sentence, I also conclude, pursuant to our prior case law, that the District Court was without jurisdiction to enter its March 6 order and, therefore, that it was of no effect.  See, e.g., State v. Fertterer (1993), 260 Mont. 397, 860 P.2d 151.  While I realize that § 46-18-117, MCA, upon which Fertterer was partially based, has been amended since then and that the amended form is applicable in this case, I would conclude that if that statute allows the kind of substantive amendment to enhance a sentence thirteen months after the defendant has begun serving his sentence, then it violates the constitutional prohibitions against double jeopardy found in the Fifth Amendment to the United States Constitution, and Article II, Section 25, of the Montana Constitution.  In United States v. Fogel (D.C. Cir. 1987), 829 F.2d 77, the circuit court gave the following explanation with

which I fully concur:

> The primary purpose of the [double jeopardy] clause is to protect the finality of judgments. United States v. Scott, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978); Crist v. Bretz, 437 U.S. 28, 33, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978). One of the interests protected by constitutional finality is that of the defendant to be free from being compelled to "live in a continuing state of anxiety and insecurity." Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The clause applies to "multiple punishment" because, if it did not apply to punishment, then the prohibition against "multiple trials" would be meaningless; a court could achieve the same result as a second trial by simply resentencing a defendant after he has served all or part of an initial sentence. See Ex parte Lange, 85 U.S. (18 Wall.) at 175. Similarly, if a court can increase a defendant's sentence after service has begun, for any reason, or for no reason at all, then the interest in protecting a defendant from being compelled to live in a continuing state of anxiety is lost. This anxiety would seem to be the same as, or akin to, that which would follow from the knowledge that a defendant can be tried again. In each case the underlying fear is that the defendant will receive punishment in addition to that which he had already received. See Ex parte Lange, 85 U.S. (18 Wall.) at 173 ("It is the punishment that would legally follow the second conviction which is the real danger guarded against."). It would seem to follow that a defendant has, barring any awareness to the contrary, an expectation of finality in the severity of a sentence that is protected by the double jeopardy clause.

> Fogel, 829 F.2d at 88.

¶72    For these reasons, I dissent from the majority opinion.

                      /S/  TERRY N. TRIEWEILER