FILED

06/11/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0644

DA 21-0644

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 127N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

KAITLYN DAWN POLICH,

     Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2020-587
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  April 24, 2024
Decided:  June 11, 2024

Filed:

                         _____
                                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Kaitlyn Dawn Polich appeals an October 29, 2021 judgment and sentence from the First Judicial District Court, Lewis and Clark County.

¶3 We affirm in part and reverse in part.

*Background*

¶4 Polich was convicted on one count of sexual intercourse without consent (SIWC) and one count of robbery for her role in a "common scheme" to haze new inmates at the Lewis and Clark County Detention Center (LCCDC) by screening their persons for drugs and/or stealing their possessions. In total, six inmates were charged for their involvement in a series of assaults and robberies at LCCDC. Polich was charged for her involvement in two.

¶5 The first incident was reported by N.K., who was booked on June 5, 2020, after failing the conditions of her pretrial release. N.K. was a methamphetamine and opiate addict, and she knew her release would be revoked when she met with her pretrial supervisor shortly after injecting methamphetamine. N.K. thus concealed Suboxone strips

2

so that she could use while she was incarcerated at LCCDC to curb opiate withdrawal symptoms.

¶6      N.K.'s release was revoked.  While she was changing out of her street clothes at LCCDC, N.K. took the Suboxone strips from her pants pocket and hid them inside her vagina where they remained, undiscovered, through booking.

¶7      After she was booked, N.K. was taken to a shared pod at the jail.  The same day, Polich accosted N.K. in an unlocked jail cell with three other women.  The women demanded that N.K. "break bread" with them by sharing her drugs.  When she denied having any drugs, Polich digitally penetrated and searched N.K.'s vagina and demanded that she pull out the Suboxone.  N.K. removed the Suboxone strips and split them between the women.

¶8      N.K. reported the incident to Detention Officer Gretchen Ulrickson the next day.  Ulrickson initially interviewed N.K., and then Lewis and Clark County Sheriff's Deputy Cole Fuhrman was dispatched to the LCCDC to take a second interview.  The incident was not investigated further because N.K. expressed an unwillingness to press charges.

¶9      Roughly three weeks later, K.P. was sexually assaulted and robbed after she was booked into LCCDC.  K.P.'s memory of the incident was unclear because she was heavily under the influence of Xanax, Klonopin, and methamphetamine when she was sent to jail.  Although K.P. did not remember Polich being involved with the sexual assault, she reported that she later saw Polich wearing her earrings, which had been stolen during the assault.  Another inmate, Miranda McArthur, testified that Polich later told her she had "checked" K.P. for drugs because she had been successful with N.K.  Danielle Fauque

testified that she saw Polich wearing K.P.'s earrings, and that Polich told her she had taken them from K.P.

¶10 K.P. reported the incident to LCCDC Corporal Heather Ryan when she learned from other inmates that N.K. had experienced a similar assault.

¶11 The case was immediately assigned to Lewis and Clark County Sheriff's Office Detective Lee Pekovitch, who investigated the incidents involving N.K. and K.P. Pekovitch interviewed N.K., K.P., along with three other inmate witnesses. Pekovitch also reviewed surveillance footage and Fuhrman's and Ryan's reports.

¶12 On October 30, 2020, Polich was charged by information with SIWC, a felony, in violation of § 45-5-503(1), MCA, for the assault on N.K.

¶13 On June 30, 2021, the State filed an amended information charging Polich on two counts of robbery by common scheme, felonies, in violation of §§ 45-5-401(1)(b) and 45-2-101(8), MCA. One robbery charge arose from the incident with N.K., and the other from her alleged involvement in the assault and robbery of K.P.[1]

¶14 During Polich's August 23-25, 2021 trial, Pekovitch testified that "It was very clear here that there was kind of like a team effort, that there was a group of females that were— participating in these crimes together." Pekovitch further explained that Polich was part of a "pattern of success with assaulting people and taking things from them. It [was] happening with the initial assault on [N.K.], and that pattern [went] through to [K.P.]."

---

[1] All told, six defendants were charged as part of the common scheme.

¶15 On August 25, 2021, at the conclusion of trial, the District Court dismissed the second robbery charge—related to the events involving K.P.—for insufficient evidence. Polich was convicted by a unanimous jury of one count of SIWC, and of one count of robbery by common scheme for the rape and robbery of N.K.

*Discussion*

¶16 On appeal, Polich does not contest the SIWC charge. Polich appeals the conviction for robbery by common scheme, arguing there is insufficient evidence to support the "common scheme" element because the jury only convicted her on one count. Polich additionally argues that her sentence is unlawful because the District Court's written sentence does not conform to the oral sentencing.

¶17 The State responds that multiple convictions are not necessary to establish a "common scheme," arguing the jury had ample evidence to find Polich was involved in a "common scheme" regardless of her involvement in the crimes against K.P. The State concedes that Condition Nos. 18, 19, 22-25 and 27 should be stricken from Polich's judgment and sentence because they were not orally imposed at sentencing.

¶18 We review challenges to the sufficiency of evidence de novo. *State v. Daniels*, 2019 MT 214, ¶ 27, 397 Mont. 204, 448 P.3d 511 (citation omitted). Reviewing the evidence in the light most favorable to the prosecution, the evidentiary basis for a conviction is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Palafox*, 2023 MT 26, ¶ 16, 411 Mont. 233, 524 P.3d 461 (citation omitted).

5

¶19    The District Court instructed the jury that a "common scheme" means "a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that results in the repeated commission of the same offense." The jury instruction did not stipulate, as Polich suggests, that a "common scheme" must result "in the repeated commission of the same offense *by the same individual*."[2] The jury could have, therefore, plausibly determined the "common scheme" element was satisfied because Polich's crimes against N.K. were linked to crimes committed against K.P. by others.

¶20    Detective Pekovitch testified that Polich was involved in a "pattern of success with assaulting people and taking things from them. It [was] happening with the initial assault on [N.K.], and that pattern [went] through to [K.P.]." Pekovitch's assessment was based, in part, on evidence indicating Polich was involved in the incident with K.P. at least to the extent that she possessed her stolen earrings. Moreover, McArthur and Fauque both testified that Polich described her involvement in the incident with K.P. to each of them directly.

¶21    We do not accept Polich's contention that this view of a "common scheme" imposes guilt for the acts of other inmates unto Polich. Significantly, the second count of robbery by common scheme was dismissed. She was only convicted for her crimes against N.K. Further, a juror could have reasonably determined that Polich's own actions linked the crimes against K.P. to her crimes against N.K.

---

[2] Nor should it have, as there would otherwise be no distinction between a "common scheme" and a "continuing course of conduct," as the State notes.

¶22 *In re B.W.* does not support Polich's position on this issue. 2014 MT 27, 373 Mont. 409, 318 P.2d 682. There, we determined it was unlawful to hold a juvenile defendant liable for damages resulting from acts of vandalism committed by others without proof of accountability or conspiracy. *In re B.W.*, ¶ 21. Even though the defendant pleaded guilty to vandalism by common scheme for his involvement in two nights of vandalism, he was not liable for restitution for eleven other nights. *In re. B.W.*, ¶ 23. As discussed, the State does not allege Polich should be held accountable for her involvement in the crimes against K.P. Unlike B.W., Polich was not convicted and sentenced for another's crimes below. *In re B.W.*, ¶ 24.

¶23 Viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have weighed the evidence and determined Polich was engaged in a common scheme linking her crimes to other assaults and robberies at the LCCDC. *Palafox*, ¶ 16.

¶24 Finally, Polich is correct that a written judgment and sentence must conform to the oral pronouncement of a sentence. *State v. Lane*, 1998 MT 76, ¶ 40, 228 Mont. 286, 957 P.2d 9. Accordingly, the District Court must strike Condition Nos. 18, 19, 22-25 and 27 from Polich's judgment and sentence because they were not orally imposed at sentencing.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26 Affirmed in part and remanded with instructions to conform the written judgment and sentence to the oral sentencing.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE