No. 04-858

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 84

_____

STATE OF MONTANA,

      Plaintiff and Respondent,

    v.

KELLY DEE MEGARD,

      Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause Nos. DC 99-6; DC 99-28; DC 01-29
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Amy N. Guth, Attorney at Law, Libby, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; Tammy Plubell, Assistant Attorney General, Helena, Montana

          Bernard G. Cassidy, County Attorney; Robert Slomski, Deputy County Attorney, Libby, Montana

_____

Submitted on Briefs:  August 10, 2005

Decided:  April 25, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Kelly Dee Megard (Megard) appeals from two *nunc pro tunc* judgments entered against him in the Nineteenth Judicial District Court, Lincoln County. These judgments reduced the number of days credit he received for prior incarceration after two of his suspended commitments to the Department of Corrections (DOC) were revoked. We vacate and remand with instructions to credit Megard for the number of days contained in the original judgments.

¶2 Megard has three different criminal convictions in Lincoln County. The first, Cause No. DC-99-6, arose on February 5, 1999, when the State filed an information charging Megard with four offenses, including felony Driving Under the Influence of Alcohol or Drugs (DUI). The second, Cause No. DC-99-28, which this appeal does not address, arose on May 10, 1999, when the State filed an information charging Megard with four offenses, including Carrying a Concealed Weapon, a felony. Megard entered a plea agreement concerning both DC-99-6 and DC-99-28. He agreed to plead guilty to felony DUI and felony Carrying a Concealed Weapon, and the State agreed to move to dismiss the other charges. Accepting the plea agreement, the District Court sentenced Megard on July 7, 1999. In DC-99-6, Megard was committed to the DOC for six months without parole followed by a four-year suspended commitment to DOC. In DC-99-28, Megard was committed to the DOC for five years, with three years suspended. These commitments were ordered to run concurrently.

¶3 Megard was released from prison on April 27, 2001, to serve the suspended portions of his commitments in DC-99-6 and DC-99-28. On July 23, 2001, the State filed an

information charging Megard with three offenses, including felony DUI, in Cause No. DC-01-29. On December 5, 2001, the State also filed a petition to revoke the suspended portion of Megard's commitments in both DC-99-6 and DC-99-28.

¶4 Megard entered a plea agreement on December 10, 2001. He agreed to plead guilty to the felony DUI charge and have his suspended commitments revoked in DC-99-6 and DC-99-28. The State agreed to dismiss the two other charges in DC-01-29. Again accepting the plea agreement, the District Court committed Megard to the DOC for 13 months, followed by a four-year suspended commitment to the DOC in DC-01-29. The District Court also re-imposed and suspended the balance of the commitments in DC-99-6 and DC-99-28. The balance of these suspended commitments was ordered to run consecutive to the commitment and suspended sentence in DC-01-29. Also in accord with the plea agreement, the District Court ordered that if Megard completed a residential treatment program during his commitment to the DOC in DC-01-29, the remainder of that commitment would be suspended.

¶5 Megard was again released on January 21, 2003, to serve the suspended portion of his commitments. The State petitioned to revoke Megard's suspended commitments in DC-01-29 on March 20, 2003, and in DC-99-6 and DC-99-28 on March 21, 2003. Megard denied some of the allegations of violation, and on April 24, 2003, the District Court held an evidentiary hearing on the petition.

¶6 At the beginning of the evidentiary hearing, Megard admitted violating two conditions of his suspended commitments. At the end of the hearing, the District Court found that Megard had also violated various other conditions. The District Court then

3

continued on to a dispositional hearing, and from the bench imposed commitments to the

DOC as follows:

> In any event, I'm going to give you some breaks here. First of all, your sentences are going to be to the Department of Corrections and not to the Montana State Prison. I think I'm required to do that since that=s what the original sentences were. And two of the original sentences ran concurrent to one another and I'm not sure if I can change that status. I'm not going to do it, in any event.
> I'm going on DC-99-6, I'm going to sentence you to four years to the Montana Department of Corrections.
> On DC-99-28, I'm going to sentence you to five years to the Montana Department of Corrections, and those two sentences will run concurrent to one another.
> On DC-01-29, I'm going to sentence you to four years to the Montana Department of Corrections. That sentence will run consecutive to the other two sentences. Against all of those sentences, or each of those sentences, you will receive timeBor credit for time actually served in the county jail, or at the WATCH program, or at pre-release, or any state institution.
> In the event that you should be released on parole, I'm going to reimpose those same conditions, numbered 1 through 21, that were made a part of your previous judgments. That=s 1 through 21 asB. Let's make that the conditions that were part of the judgment and sentence in DC-01-29, which are slightly different. Conditions 1 through 22 will be reimposed. The Defendant is entitled to receive credit also against the fines that were previously imposed. Credit in the amount of $63.76 a day, I think it is.
> The reasons for the sentence are that it takes into account the Defendant's criminal record. It takes into account his failure to live up to the rules of probation including the violation that resulted in physical violence directed toward another individual. It takes into account the nature of the offenseBoffenses. And I will ask the State to prepare sentencing orders for my consideration and signature.

¶7 Thus, from the bench, the District Court gave Megard credit for all time that he had

served on any of the commitments to apply to each of the commitments. This means, that

for the concurrent commitments in DC-99-6 and DC-99-28, he was to receive credit for all

time served from his arrest to his release on these charges, and in addition for all time that

he had served on DC-01-29 up to and including April 24, 2003. On DC-01-29, the District

4

Court gave Megard credit against time served on the commitments since the date he was first arrested on that charge up to and including April 24, 2003. What the District Court did not do was specify what portion of the time that Megard spent in jail on any particular commitment was time served not on a suspended commitment, but served on inmate status.

¶8 The District Court signed and filed its written judgment and sentence in DC-99-28 on April 28, 2003, crediting Megard with 823 days. The District Court filed its written judgment and sentence for DC-99-6 on April 29, 2003, crediting him with 763 days. The District Court filed its written judgment and sentence for DC-01-29 on April 29, 2003, crediting Megard with 398 days for time served. This Court affirmed these judgments in *State v. Megard*, 2004 MT 67, 320 Mont. 323, 87 P.3d 448, and remittitur issued on April 12, 2004.

¶9 All three judgments included the following language:

> Having considered ' 46-18-203(7)(b), M.C.A., the Court expressly denies Defendant credit toward his sentence for any elapsed time while the Defendant was under his initial probationary sentence, except for the time that Defendant was actually incarcerated. The Court's reasons for denying credit are Defendant's violations of the terms and conditions of his probation.

¶10 Thus, in both the oral sentence and the written judgments Megard was given credit for the time he was incarcerated on all three of the commitments, but no credit for time he spent on the street. Neither the oral pronouncement from the bench nor any of the written judgments state that credit for time served is denied for time spent while incarcerated on another of the charges.

¶11 From the bench, the District Judge stated that Megard was to receive credit for time spent at the WATCH program, at a pre-release center, or in another state institution on each

commitment. However, Megard spent some time in prison on all three charges, and in connection with DC-01-29, he spent up to 13 months at the WATCH program. There is no indication whether time spent in jail, which was not suspended time on one commitment, was to be credited as time spent on the suspended portion of another of the commitments. The oral judgment is hopelessly confusing.

¶12    However, the written judgments are not confusing. They are precise, and state the exact number of days of incarceration Megard was to be credited with on each commitment.

¶13    On September 22, 2004, the State filed motions to correct Megard's judgment and sentence in both DC-99-6 and DC-01-29. The State alleged that Megard had received too many days credit against these sentences. The State argued that Megard should have received only 89 days credit on DC-99-6, and 47 days credit on DC-01-29.

¶14    Over Megard's objection, the District Court granted the State's motions and on October 29, 2004, issued a Judgment and Sentence Nunc Pro Tunc in both cases, changing the credit for time served to 89 days in DC-99-6 and 47 days in DC-01-29. This appeal followed.

¶15    The issue before the Court is whether the District Court erred in amending its judgments, *nunc pro tunc*, to the effect that Megard received less credit for time served.

¶16    This Court reviews a district court's imposition of sentence for legality only. *State v. Kroll*, 2004 MT 203, & 12, 322 Mont. 294, & 12, 95 P.3d 717, & 12. The question is one of law and the determination is whether the district court interpreted the law correctly. *Kroll*, & 12.

6

¶17    Once a valid sentence has been pronounced, the court imposing that sentence has no authority to modify or change it, except as provided by statute. *State v. Fertterer* (1993), 260 Mont. 397, 400, 860 P.2d 151, 154. The applicable statute in the present case, ' 46-18-116(2)-(3), MCA, provides as follows:

> (2) If a written judgment and an oral pronouncement of sentence or other disposition conflict, the defendant or the prosecutor in the county in which the sentence was imposed may, within 120 days after filing of the written judgment, request that the court modify the written judgment to conform to the oral pronouncement. The court shall modify the written judgment to conform to the oral pronouncement at a hearing, and the defendant must be present at the hearing unless the defendant waives the right to be present or elects to proceed pursuant to 46-18-115. The defendant and the prosecutor waive the right to request modification of the written judgment if a request for modification of the written judgment is not filed within 120 days after the filing of the written judgment in the sentencing court.
> (3) The court may correct a factually erroneous sentence or judgment at any time. Illegal sentences must be addressed in the manner provided by law for appeal and postconviction relief.

¶18    The oral pronouncement from the bench, while confusing, does not conflict with the written judgments. Thus, it is the written judgments of April 29, 2003, that control Megard's commitments, unless they can be corrected pursuant to § 46-18-116, MCA. The District Court entered the original written judgments on April 29, 2003. The State did not move to correct these judgments until September 22, 2004, approximately seventeen months later. Thus, only subsection (3) of § 46-18-116, MCA, could apply in this case, which allows a factually erroneous judgment to be corrected at any time.

¶19    Pursuant to § 46-18-116, MCA, and long standing precedent, a court can amend a factually erroneous judgment. *State v. Winterrowd*, 1998 MT 74, ¶ 14, 288 Mont. 208, ¶ 14, 957 P.2d 522, ¶ 14. Such an amendment may only be made to correct an error that is

7

apparent on the face of the record so as to insure that the correction does not in effect set aside a judgment actually rendered nor change what was originally intended. *State v. Christianson,* 1999 MT 156, ¶ 25, 295 Mont. 100, ¶ 25, 983 P.2d 909, ¶ 25; *State v. Owens* (1988), 230 Mont. 135, 138, 748 P.2d 473, 474. The law does not permit a court to exercise a revisory power over its own adjudications after they have, in contemplation of the law, passed out of the "breast of the judges." *Fredericks v. Davis* (1887), 6 Mont. 460, 463, 13 P. 125, 127 (quoting Freem. Judgm. (2nd Ed.) § 101). It is incumbent upon a sentencing judge to choose his words carefully so that the defendant knows what his sentence is. *State v. Lane,* 1998 MT 76, ¶ 38, 288 Mont. 286, ¶ 38, 957 P.2d 9, ¶ 38.

¶20 The distinction between what can be corrected by a judgment *nunc pro tunc* and what cannot was drawn by Justice Bach some time ago. The court does not have the power to amend the record, in order that the record may show that which did not take place, thus exercising a revisory or appellate power over its own decisions. What the court always has is the power to make the record speak the truth. *Territory v. Clayton* (1888), 8 Mont. 1, 16-17, 19 P. 293, 300.

¶21 The District Court, in its orders granting the State's motions to correct the judgments, nearly a year and a half later, ruled that its intentions were not carried out in the written judgments of April 29, 2003, and that such judgments granted Megard too much credit for time served. However, these first judgments are not factually incorrect. They state the truth of what credit for time served was at that time ordered. They are not in conflict with the oral pronouncement of Megard's sentences from the bench. The record created at or near the time of sentencing reflects the intent of the sentencing judge. In order

8

to enter the later judgments of October 29, 2004, an amendment adding to the record was required.  Thus, the amended judgments of October 29, 2004, are not within the purview of § 46-18-116(3), MCA, are illegal, and must be vacated.

¶22    The judgments entered October 29, 2004, in Lincoln County Cause Nos. DC-99-6 and DC-01-29 are vacated, and this case is remanded to the District Court with directions to re-instate the judgments entered on April 29, 2003, in both DC-99-6 and DC-01-29.


/S/ JOHN WARNER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE