DA 06-0730

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 317

STATE OF MONTANA,

 Plaintiff and Appellee,

v.

RONALD ALLAN CLARK,

 Defendant and Appellant.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 2006-254A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

 For Appellant:

 Andrew J. Breuner, Law Office of Andrew J. Breuner, Gallatin Gateway,
Montana

 For Appellee:

 Hon. Mike McGrath, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

 Paul Luwe, Bozeman City Attorney, Susan Wordal, Assistant
City Attorney, Bozeman, Montana

 Submitted on Briefs:  July 25, 2007

 Decided:  September 12, 2008

Filed:

 _____
 Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Ronald Allan Clark appeals from the order of the District Court for the Eighteenth Judicial District, Gallatin County, dismissing his appeal from the Bozeman Municipal Court. We affirm.

## BACKGROUND

¶2 On July 7, 2005, Clark was cited by a City of Bozeman police officer with operating a motor vehicle without proof of insurance, second offense, a misdemeanor, in violation of § 61-6-302, MCA. He pleaded not guilty at his initial appearance in Municipal Court on July 21, 2005. Following four continuances, three of which were requested by Clark, the court set a bench trial for June 12, 2006. Clark failed to appear for trial on this date, and the court tried and convicted him in absentia.

¶3 After finding Clark guilty, the court solicited a sentencing recommendation from the prosecutor. Thereupon, the court stated that "the sentence of the court" was 6 months in the Gallatin County Detention Center, all suspended, a $450 fine, and $120 in costs. In addition, the court listed a number of conditions on "the sentence imposed this afternoon." Finally, the court required Clark to surrender to the Department of Motor Vehicles, for a period of 90 days, the license plates and registration of the vehicle he had been driving. The court's written sentencing order, dated June 12, 2006, is identical to the court's oral sentence.

¶4 Also on June 12, 2006, the Municipal Court issued a bench warrant due to Clark's failure to appear. The bench warrant was served in Missoula on or about July 11, 2006, and Clark appeared before the Municipal Court on July 14, 2006. At this time, the court

informed Clark of "the sentence that *was imposed*" on June 12 (emphasis added). However, in explaining the 90-day suspension of the license plates and registration, the court stated that the vehicle Clark had been driving "cannot be operated for 90 days once this sentence is imposed, which is now, today, even though this occurred on June 12th. . . . You didn't know about it, so *it's imposed today*" (emphasis added). Furthermore, the court informed Clark that "any period of appeal that might exist begins to run from today." In this regard, we note that the Uniform Municipal Court Rules of Appeal to District Court ("U.M.C.R.App."; *see* Title 25, Chapter 30, MCA) provide that an appeal from a judgment in a criminal case shall be taken by filing a timely notice of appeal in the municipal court "within 10 days" (not including intermediate Saturdays, Sundays, and legal holidays). U.M.C.R.App. 4(a), 5(b)(3), 20(a); *see also* § 46-17-311(2), MCA.

¶5     Clark, proceeding pro se, filed a combined Notice of Appeal and Request for Public Defender on July 28, 2006—46 days after the Municipal Court found him guilty and first announced his sentence, and 10 business days after he appeared on the bench warrant and was informed of the sentence. The Municipal Court transferred the file to District Court on August 15, 2006. That same day, the District Court gave notice that it had received the file and that, pursuant to U.M.C.R.App. 14(a), Clark had 15 days in which to file a brief. Notwithstanding, on August 21, 2006, the District Court sua sponte issued an order dismissing Clark's appeal on the ground that his appeal from the Municipal Court was untimely.

¶6     Clark, now represented by counsel, appeals from the District Court's order.

3

**ISSUE**

¶7 The sole issue raised by Clark is whether the District Court erred in its determination that Clark's appeal from the Municipal Court was untimely.

**STANDARD OF REVIEW**

¶8 To determine whether Clark's appeal was untimely, it is necessary to determine when Clark's sentence was imposed by the Municipal Court. This latter determination involves the application of controlling legal principles to undisputed factual circumstances. As such, it is a mixed question of law and fact, which we review de novo. *See State v. Warclub*, 2005 MT 149, ¶¶ 21, 23, 327 Mont. 352, ¶¶ 21, 23, 114 P.3d 254, ¶¶ 21, 23. Similarly, the interpretation and construction of a rule of procedure is a matter of law, which we review de novo, determining whether the court's interpretation and construction of the rule is correct. *Miller v. District Court*, 2007 MT 149, ¶ 22, 337 Mont. 488, ¶ 22, 162 P.3d 121, ¶ 22.

**DISCUSSION**

¶9 ***Did the District Court err in its determination that Clark's appeal from the Municipal Court was untimely?***

¶10 An appeal from a municipal court in a criminal case may be taken only from a final judgment of conviction and orders after judgment. U.M.C.R.App. 5(b)(2); § 46-20-104(1), MCA. A judgment is not "final" until the sentence is pronounced by the court. Section 46-1-202(11), MCA; *see also State v. Bonamarte*, 2006 MT 291, ¶ 6, 334 Mont. 376, ¶ 6, 147 P.3d 220, ¶ 6. The oral pronouncement of sentence is the legally effective sentence. *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9,

4

¶ 40.  However, the period for filing the notice of appeal runs from the date on which the court enters the written judgment and sentence following oral pronouncement.  *See Bonamarte*, ¶ 9.[1]  Lastly, as noted above, an appeal from a municipal court judgment in a criminal case must be taken within 10 days (not including intermediate Saturdays, Sundays, and legal holidays) after the judgment and sentence are entered.  U.M.C.R.App. 4(a), 5(b)(3), 20(a).

¶11    The parties do not dispute these rules, nor do they dispute that Clark's notice of appeal was filed within 10 business days after July 14, 2006.  Rather, they disagree as to what date the period for filing Clark's notice of appeal began to run.  More specifically, they disagree as to when the Municipal Court's final judgment was entered.

¶12    Clark contends that his sentence was orally pronounced on July 14, 2006, when he appeared on the bench warrant.  He points out that the Municipal Court explicitly stated that it was imposing sentence that day.  He acknowledges that the court, at one point, referred to the sentence previously announced on June 12 as "the sentence that was imposed," but he maintains that what the court meant was that it had "determined" the terms of his sentence on June 12 and that it was "imposing" that sentence as of July 14.  Moreover, he points out that the Municipal Court specifically told him that "any period of appeal that might exist begins to run from today"—i.e., from July 14, 2006.  Thus, Clark

---

[1] Clark and the State both rely on *State v. Mortenson*, 175 Mont. 403, 574 P.2d 581 (1978), for the proposition that the period for filing a notice of appeal runs from the date on which the court orally renders judgment in open court.  *See Mortenson*, 175 Mont. at 405, 574 P.2d at 582; *see also State v. Tweedy*, 277 Mont. 313, 316-17, 922 P.2d 1134, 1135-36 (1996).  While this may have been true at the time *Mortenson* and *Tweedy* were decided, it is no longer a correct statement of the law.  *See Bonamarte*, ¶ 9.

maintains that his sentence was not entered until July 14 and, thus, that his time for filing his notice of appeal began to run on that date.

¶13    In response, the State insists that oral pronouncement of sentence occurred on June 12, 2006. The State points out that the Municipal Court did not issue an order following Clark's conviction "setting a sentencing hearing or otherwise reserving sentence for the personal appearance of Clark." The State also points out that " '[i]n all misdemeanor cases, the verdict may be returned *and the sentence imposed* without the defendant being present' " (emphasis added; quoting § 46-16-123(1), MCA). Thus, the State maintains that Clark's sentence was pronounced in open court on June 12 "regardless of whether Clark was informed of the sentence at the time." As for Clark's July 14, 2006 appearance in the Municipal Court, the State contends that this hearing was "as a result of a bench warrant" and was "not, in name, form, or substance, a 'sentencing hearing.' " In addition, the State asserts that the Municipal Court "was without authority to extend the rules of procedure and allow additional time for Clark to appeal his sentence."

¶14    A critical issue is readily apparent from the parties' arguments and the facts of this case. Clark contends that his sentence was not imposed until he appeared in court on July 14, 2006, whereas the State contends that his sentence was imposed in his absence on June 12, 2006. Thus, in determining the legally effective date of Clark's sentence, the question arises as to whether a defendant can lawfully be sentenced in absentia on a misdemeanor offense. In this regard, we note that this Court held in *Lane* that "the sentence orally pronounced from the bench *in the presence of the defendant* is the legally effective sentence and valid, final judgment." *Lane*, ¶ 40 (emphasis added). This holding

6

rested on a number of considerations. We noted that a criminal defendant has a constitutional right to be present in the courtroom when his sentence is pronounced. *See Lane*, ¶ 31. Furthermore, we observed that a number of Montana statutes—namely, §§ 46-16-121(1), 46-16-123(2), and 46-18-115, MCA—implement this constitutional right by requiring the defendant's presence at sentencing and by giving him an opportunity to respond before the trial court imposes the sentence. *See Lane*, ¶¶ 32-33. Yet, §§ 46-16-121(1) and -123(2), MCA, are specific to felonies; and in contrast to these two statutes, § 46-16-123(1), MCA, authorizes the sentencing of a defendant in absentia on a misdemeanor offense. Clark has not challenged § 46-16-123(1), MCA, in light of *Lane*; therefore, we will assume, for purposes of this case, that Clark could lawfully be sentenced in absentia. Our holding herein should not be construed as expressing an opinion either way on this question.

¶15 Given this assumption, we agree with the State that the Municipal Court pronounced a legally effective sentence immediately following Clark's conviction on June 12, 2006. The court did not set a sentencing hearing or otherwise suggest that it would impose sentence once Clark appeared on the bench warrant. Rather, the audio recording of the June 12 proceeding establishes that the court solicited a sentencing recommendation from the prosecutor and, immediately thereafter, announced the specifics of Clark's sentence. Among other things, the court ordered that Clark comply with "the conditions of the sentence *imposed this afternoon*" (emphasis added). That same day, the court entered a written sentencing order which contained terms identical to the court's oral sentence. There is no indication anywhere in the record of the events of

7

June 12 that the court was postponing pronouncement of Clark's sentence until he appeared on the bench warrant.

¶16 Indeed, even at the outset of the July 14 hearing, the court informed Clark of "the sentence that *was imposed*" on June 12 (emphasis added). It was not until the court explained the 90-day suspension of the license plates and registration that the court stated it was imposing Clark's sentence "now, today, even though this occurred on June 12th." The court reasoned that Clark "didn't know about it, so it's imposed today"; however, this attempt to vacate and reimpose the sentence pronounced on June 12 was legally ineffective. As the State points out, once a valid sentence has been pronounced, the court imposing that sentence has no authority to modify or change it, except as provided by statute. *See State v. Megard*, 2006 MT 84, ¶ 17, 332 Mont. 27, ¶ 17, 134 P.3d 90, ¶ 17 (citing *State v. Fertterer*, 260 Mont. 397, 400, 860 P.2d 151, 154 (1993)). Section 46-18-116, MCA, sets forth grounds for modifying or correcting a sentence or judgment, but none of them applies here.

¶17 Given these facts, we hold that Clark's sentence was pronounced and entered on June 12, 2006. Accordingly, pursuant to U.M.C.R.App. 4(a), 5(b)(3), and 20(a), Clark had until June 26, 2006, to file his notice of appeal. He filed his notice of appeal on July 28, 2006. Accordingly, we conclude that the District Court did not err in its determination that Clark's appeal from the Municipal Court was untimely.

¶18 Affirmed.

/S/ JAMES C. NELSON

8

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson, specially concurring.

¶19     I believe that the Court's Opinion correctly and fully resolves the specific issue presented by Clark—namely, whether the District Court erred in its determination that his appeal from the Municipal Court was untimely. However, the obvious question left unanswered by our Opinion—because Clark failed to raise it—is whether it was appropriate for the District Court to dismiss Clark's untimely appeal sua sponte. In view of recent decisions of this Court and the United States Supreme Court, I write separately to explain why, in my view, the ground provided by the District Court for dismissing Clark's appeal was incorrect.

¶20     The District Court dismissed Clark's appeal in light of the time prescription contained in U.M.C.R.App. 5(b)(3). The court reasoned that by virtue of this rule and the untimely filing of Clark's notice of appeal, it did not have "jurisdiction" over his appeal. In other words, the District Court assumed that its jurisdiction over appeals from municipal court judgments is circumscribed by U.M.C.R.App. 5(b)(3). There is support for this reasoning in our caselaw, as we have, not infrequently, described the filing deadlines for notices of appeal as "mandatory and jurisdictional."[1]

---

[1] *See e.g. Colmore v. Uninsured Employers' Fund*, 2005 MT 239, ¶ 39, 328 Mont. 441, ¶ 39, 121 P.3d 1007, ¶ 39; *State v. Tweed*, 2002 MT 286, ¶ 11, 312 Mont. 482, ¶ 11, 59 P.3d 1105, ¶ 11; *In re Marriage of Yeanuzzi*, 2001 MT 171, ¶ 5, 306 Mont. 163, ¶ 5, 30 P.3d 1095, ¶ 5; *Joseph Eve & Co. v. Allen*, 284 Mont. 511, 514, 945 P.2d 897, 899 (1997); *MCI Telecommunications Corp. v. Dept. of Public Service Regulation*, 260 Mont. 175, 177, 858 P.2d 364, 366 (1993); *First Sec. Bank of Havre v. Harmon*, 255 Mont. 168, 172, 841 P.2d 521, 524 (1992); *Anderson v. Bashey*, 241 Mont. 252, 255, 787 P.2d 304, 306 (1990); *O'Connell v. Heisdorf*, 202 Mont. 89, 91, 656 P.2d 199, 200 (1982); *Price v. Zunchich*, 188 Mont. 230, 235, 612 P.2d 1296, 1299 (1980); *Leitheiser v. Montana State Prison*, 161 Mont. 343, 346, 505 P.2d 1203, 1205 (1973) (per curiam); *McVay v. McVay*,

¶21    In more recent cases, however, we have acknowledged that "[j]urisdiction is a word of many, too many, meanings" and that we, along with other courts, sometimes have been "profligate" in our use of the term. *DeShields v. State*, 2006 MT 58, ¶ 10, 331 Mont. 329, ¶ 10, 132 P.3d 540, ¶ 10 (citations and internal quotation marks omitted); *see also Davis v. State*, 2008 MT 226, ¶ 23, 344 Mont. 300, ¶ 23, 187 P.3d 654, ¶ 23 (noting cases in which we have been "less than meticulous" in this regard); *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶ 15, 340 Mont. 56, ¶ 15, 172 P.3d 1232, ¶ 15 (noting that the broad nature of the term has led to "confusion" as to its meaning). Accordingly, in an effort to promote clarity in the actual meaning of "jurisdiction," we have been more thoughtful and cautious in our use of this term and have disapproved or overruled prior misusages. *See e.g. Davis*, ¶¶ 12-23; *State v. Garrymore*, 2006 MT 245, ¶ 10 n. 1, 334 Mont. 1, ¶ 10 n. 1, 145 P.3d 946, ¶ 10 n. 1; *Miller v. District Court*, 2007 MT 149, ¶¶ 42-44, 337 Mont. 488, ¶¶ 42-44, 162 P.3d 121, ¶¶ 42-44. Correspondingly, it is necessary that we reconsider whether the filing deadline on a notice of appeal is truly "jurisdictional" or merely a categorical claim-processing rule.

¶22    In *Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906 (2004), the Supreme Court observed that classifying time prescriptions, even rigid ones, as "jurisdictional" can be

128 Mont. 31, 34, 270 P.2d 393, 394 (1954); *State ex rel. Clark v. District Court*, 128 Mont. 526, 528, 532, 278 P.2d 1000, 1001, 1003 (1954); *State ex rel. Reid v. District Court*, 126 Mont. 489, 492, 499, 255 P.2d 693, 695, 698 (1953); *State ex rel. Albrecht v. District Court*, 126 Mont. 178, 180, 246 P.2d 1035, 1036 (1952). We have also said more generally that statutes "relating to appeals" are "mandatory and jurisdictional." *See e.g. State v. Kempin*, 2001 MT 313, ¶ 8, 308 Mont. 17, ¶ 8, 38 P.3d 859, ¶ 8; *State v. Fox*, 2001 MT 209, ¶ 12, 306 Mont. 353, ¶ 12, 34 P.3d 484, ¶ 12; *State v. Feight*, 2001 MT 205, ¶ 14, 306 Mont. 312, ¶ 14, 33 P.3d 623, ¶ 14; *Montana Power Co. v. Dept. of Public Service Regulation*, 218 Mont. 471, 479, 709 P.2d 995, 999 (1985).

"confounding." *Kontrick*, 540 U.S. at 455, 124 S. Ct. at 915. The Court suggested that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick*, 540 U.S. at 455, 124 S. Ct. at 915; *accord Eberhart v. United States*, 546 U.S. 12, 16, 126 S. Ct. 403, 405 (2005) (per curiam). Similarly, we emphasized in *Miller* that "[i]t is important not to confuse categorical time prescriptions with jurisdictional provisions." *Miller*, ¶ 43. Jurisdiction involves the fundamental power and authority of a court to hear and decide an issue; as such, it cannot be forfeited, waived, or conferred by the consent of the parties. *Miller*, ¶¶ 43, 44 (citing *Stanley v. Lemire*, 2006 MT 304, ¶ 30, 334 Mont. 489, ¶ 30, 148 P.3d 643, ¶ 30, *In re Marriage of Miller*, 259 Mont. 424, 427, 856 P.2d 1378, 1380 (1993), and *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006)). By contrast, categorical time prescriptions are inflexible or rigid—but nonjurisdictional—claim-processing rules, which are unalterable if timely asserted by a party but can be forfeited if the party waits too long to raise the point. *Miller*, ¶ 44 (citing *Kontrick*, 540 U.S. at 454-55, 456, 124 S. Ct. at 915, 916, and *Eberhart*, 546 U.S. at 19, 126 S. Ct. at 407).

¶23 Of particular relevance to the case at hand, the Supreme Court stated in *Kontrick* that time limitations contained in rules of court are *not* jurisdictional. *See Kontrick*, 540 U.S. at 453-54, 124 S. Ct. at 914; *see also Eberhart*, 546 U.S. at 15-19, 126 S. Ct. at 404-07; *United States v. Sadler*, 480 F.3d 932, 936-37 (9th Cir. 2007). Indeed, "it is axiomatic," the Court observed, that court-prescribed rules of practice and procedure "do

not create or withdraw federal jurisdiction." *Kontrick*, 540 U.S. at 453, 124 S. Ct. at 914 (alteration and internal quotation marks omitted). Along these same lines, we stated in *Miller* that a rule adopted pursuant to this Court's constitutional rulemaking authority is not jurisdictional. At issue in that case was a rule applicable to proceedings in the district courts. We noted that the subject-matter jurisdiction of the district courts is established by Article VII, Section 4 of the Montana Constitution and that this Court's authority under Article VII, Section 2(3) to "make rules governing . . . practice and procedure" in the district courts does not enable us to withdraw the jurisdiction of the district courts as defined in the Montana Constitution. *See Miller*, ¶ 45.[2]

¶24 Given these clarifications in this Court's and the Supreme Court's recent jurisprudence concerning the meaning of jurisdiction, the District Court's reasoning that it did not have "jurisdiction" over Clark's appeal because his notice of appeal was untimely under U.M.C.R.App. 5(b)(3) was incorrect. Jurisdiction is conferred on courts only by the Constitution or statutes adopted pursuant to the Constitution. *Pinnow v. Montana State Fund*, 2007 MT 332, ¶ 20, 340 Mont. 217, ¶ 20, 172 P.3d 1273, ¶ 20. U.M.C.R.App. 5(b)(3), however, was adopted by order of this Court on March 19, 1998. Court-prescribed rules of practice and procedure simply cannot create or withdraw jurisdiction. *Kontrick*, 540 U.S. at 453, 124 S. Ct. at 914; *Miller*, ¶ 45. Thus, U.M.C.R.App. 5(b)(3) is not a jurisdictional limitation. *Cf. Sadler*, 480 F.3d at 938-40

---

[2] For these same reasons, the suggestion in Rule 4 of the Rules of Appellate Procedure that the timeliness of a notice of appeal is "jurisdictional" is unsustainable. This Court's appellate jurisdiction is established by Article VII, Section 2 of the Montana Constitution. While we "may make rules governing appellate procedure," Mont. Const. art. VII, § 2(3), we may not, by rule, expand or withdraw our appellate jurisdiction.

(holding, in light of *Kontrick* and *Eberhart*, that the time limitation under Fed. R. App. P. 4(b) for filing a notice of appeal in a criminal case is not jurisdictional).[3]

¶25 The State points out that the Montana Code contains a statutory time prescription for appeals from courts of limited jurisdiction. Specifically, § 46-17-311(2), MCA, states that "[t]he defendant may appeal to the district court by filing written notice of intention to appeal within 10 days after a judgment is rendered following trial or the denial of the motion to withdraw a plea as provided in 46-17-203(2)(b)." However, statutory time limitations are not necessarily jurisdictional. For instance, the Supreme Court held in *Scarborough v. Principi*, 541 U.S. 401, 124 S. Ct. 1856 (2004), that a statutory provision prescribing the timing and content of an application for legal fees is not jurisdictional. *See Scarborough*, 541 U.S. at 413-14, 124 S. Ct. at 1864-65. The Court noted that the provision "does not describe what 'classes of cases' the [Court of Appeals for Veterans Claims] is competent to adjudicate; instead, the section relates only to postjudgment proceedings auxiliary to cases already within that court's adjudicatory authority." *Scarborough*, 541 U.S. at 414, 124 S. Ct. at 1865 (citation omitted). Likewise, as a general rule, a statute of limitations is not jurisdictional but, rather, is an affirmative

---

[3] In *Bowles v. Russell*, ___ U.S. ___, 127 S. Ct. 2360 (2007), the Supreme Court concluded that the time limitation in Fed. R. App. P. 4(a) for filing a notice of appeal in a *civil* case is jurisdictional. However, in reaching this conclusion, the Court observed that Rule 4(a) implements a statutory provision (in particular, 28 U.S.C. § 2107), *see Bowles*, 127 S. Ct. at 2363-65, and that the United States Constitution gives Congress the power to determine the jurisdiction of the lower federal courts, *see Bowles*, 127 S. Ct. at 2365-66. This latter point is a critical distinction between time prescriptions contained in federal statutes and time prescriptions contained in state statutes, since the jurisdiction of Montana's district courts is established by the Montana Constitution, not by the Legislature. *See Miller*, ¶ 45; Mont. Const. art. VII, § 4.

defense that is subject to forfeiture and waiver. *See John R. Sand & Gravel Co. v. United States*, ___ U.S. ___, 128 S. Ct. 750, 753 (2008); *Day v. McDonough*, 547 U.S. 198, 205, 126 S. Ct. 1675, 1681 (2006); *Marias Healthcare Services, Inc. v. Turenne*, 2001 MT 127, ¶ 9, 305 Mont. 419, ¶ 9, 28 P.3d 491, ¶ 9; *Davis*, ¶¶ 14-15. Time prescriptions that are subject to equitable exceptions are similarly not jurisdictional. *See e.g. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98, 102 S. Ct. 1127, 1132-35 (1982); *Diaz v. Kelly*, 515 F.3d 149, 153 (2nd Cir. 2008); *Peña v. State*, 2004 MT 293, ¶ 41, 323 Mont. 347, ¶ 41, 100 P.3d 154, ¶ 41 (Leaphart, J., concurring and dissenting). As the Supreme Court explained in *Kontrick*, "[c]haracteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct." *Kontrick*, 540 U.S. at 456, 124 S. Ct. at 916; *see also Miller*, ¶ 44 (observing that subject-matter jurisdiction cannot be forfeited, waived, or conferred by the consent of the parties). The Court noted that this is a "critical difference" between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule. *See Kontrick*, 540 U.S. at 456, 124 S. Ct. at 916.[4]

¶26    Here, § 46-17-311(2), MCA, does not proscribe a class of cases that the district courts are incompetent to adjudicate. Indeed, it " 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.' " *Arbaugh*, 546 U.S. at 515,

---

[4] In this regard, our statement in *State v. Tweed*, 2002 MT 286, ¶ 14, 312 Mont. 482, ¶ 14, 59 P.3d 1105, ¶ 14, that "[a]n out-of-time appeal is a remedy that may be available to a criminal defendant who, through no fault of his own, misses a deadline for filing an appeal," directly contradicts the notion that the filing deadlines for notices of appeal are "mandatory and jurisdictional." Likewise, we could not have reset the time period for filing a notice of appeal in *Adair v. Justice Court*, 213 Mont. 466, 692 P.2d 13 (1984), and *State v. Tecca*, 220 Mont. 68, 713 P.2d 541 (1986), if the time prescription were truly "jurisdictional."

126 S. Ct. at 1245 (quoting *Zipes*, 455 U.S. at 394, 102 S. Ct. at 1133); *cf. State v. Osborne*, 2005 MT 264, 329 Mont. 95, 102B, 124 P.3d 1085, 1091 (Leaphart, Nelson & Cotter, JJ., dissenting from denial of rehearing) (observing that the statutory provision at issue did not proscribe a class of cases "in a substantive jurisdictional sense" but, rather, barred claims based on their timing). Moreover, the time prescription contained in § 46-17-311(2), MCA, is subject to a good-cause exception. *See* § 46-17-311(3), MCA ("The defendant may petition the district court to order the record transmitted upon a showing of good cause for failure to timely file the notice of appeal."). Thus, § 46-17-311(2), MCA, appears to be a claim-processing rule, not a jurisdictional provision.

¶27    But even if § 46-17-311(2), MCA, could be read as setting forth a limitation on the appellate jurisdiction of the district courts, the Legislature lacks the power and authority to impose such a limitation. Article VII, Section 4(2) of the Montana Constitution specifically recognizes the appellate jurisdiction of the district courts. It states, in pertinent part: "The district court shall hear appeals from inferior courts as trials anew unless otherwise provided by law." When Delegate John M. Schiltz presented the proposed language of this section, it read simply: "The District Court shall hear appeals from inferior courts as trials anew." *See* Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1074. Speaking on behalf of the ad hoc committee, which had worked out a compromise with respect to the language of Article VII, Section 4, he explained: "We provided that the District Court should have the absolute duty to hear appeals from inferior courts and that those would be tried anew." Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, p. 1074. The clause

"unless otherwise provided by law" was added later, by amendment, to provide the Legislature with the authority to eliminate the "anew" aspect of appeals from inferior courts; in other words, the delegates contemplated that the Legislature might limit such appeals to the record. *See* Montana Constitutional Convention, Verbatim Transcript, February 29, 1972, pp. 1075-78. But there is no indication in the debate or in the language ultimately adopted that the delegates sought to limit the appellate jurisdiction of the district courts in any other way or to authorize the Legislature to do so by statute.[5]

---

[5] This history behind the adoption of Article VII, Section 4(2), calls into question this Court's past assumption that the right to appeal from a court of limited jurisdiction to a district court is "purely statutory." In *State v. Province*, 226 Mont. 425, 735 P.2d 1128 (1987), in the context of addressing an appeal by the State from justice court to district court and then to this Court, we observed—without citation to any authority—that "[r]egardless of which party is appealing, this Court has consistently held that compliance with the statute is required to perfect an appeal *because it is exclusively a statutory right*." *Province*, 226 Mont. at 426, 735 P.2d at 1129 (emphasis added). This notion that the right to appeal to a district court exists only as provided by statute was carried forward into numerous cases. *See e.g. State v. Hartford*, 228 Mont. 254, 256, 741 P.2d 1337, 1338 (1987); *State v. Arthur*, 234 Mont. 75, 76-77, 761 P.2d 806, 807-08 (1988); *State v. Speith*, 244 Mont. 392, 394, 797 P.2d 221, 222 (1990); *State v. Barker*, 260 Mont. 85, 91, 858 P.2d 360, 363 (1993); *State v. Todd*, 262 Mont. 108, 113, 863 P.2d 423, 426 (1993); *State v. Ward*, 266 Mont. 424, 427, 880 P.2d 1343, 1345 (1994); *State v. Price*, 271 Mont. 409, 410, 897 P.2d 1084, 1085 (1995); *City of Three Forks v. Schillinger*, 2007 MT 331, ¶ 13, 340 Mont. 211, ¶ 13, 173 P.3d 681, ¶ 13. Indeed, the premise that "the right to appeal a criminal conviction from a [court of limited jurisdiction] is purely statutory" was the underpinning of our decisions in *State v. Feight*, 2001 MT 205, 306 Mont. 312, 33 P.3d 623, and its progeny. *See Feight*, ¶¶ 11-12; *State v. Fox*, 2001 MT 209, 306 Mont. 353, 34 P.3d 484; *State v. Kempin*, 2001 MT 313, 308 Mont. 17, 38 P.3d 859; *State v. Boucher*, 2002 MT 114, 309 Mont. 514, 48 P.3d 21. Yet, in view of the language of Article VII, Section 4(2), and the history of its adoption, there is clearly a *constitutional* component to the right to appeal to a district court. And though this Court and the Legislature may enact claim-processing rules to implement this right and to control the manner of appeal, *see e.g. State v. Schindler*, 268 Mont. 489, 886 P.2d 978 (1994), neither we nor the Legislature may by rule, caselaw, or statute expand or withdraw the district courts' constitutionally-conferred jurisdiction over appeals from inferior courts.

¶28 For these reasons, I conclude that the 10-day limit on filing a notice of appeal in municipal court is a categorical time prescription that " 'assure[s] relief' " when properly raised but does not compel the same result if the party " 'waits too long to raise the point.' " *Miller v. District Court*, 2007 MT 149, ¶ 46, 337 Mont. 488, ¶ 46, 162 P.3d 121, ¶ 46 (alteration in original) (quoting *Eberhart*, 546 U.S. at 15, 19, 126 S. Ct. at 404, 407). But that does not end the analysis. The State never raised this time prescription in the District Court. Rather, six days after receiving the file from the Municipal Court, the District Court raised the filing deadline on its own initiative and dismissed Clark's appeal. On the ground provided by the District Court—namely, that it lacked "jurisdiction"—this action was not improper. *See Stanley v. Lemire*, 2006 MT 304, ¶ 32, 334 Mont. 489, ¶ 32, 148 P.3d 643, ¶ 32 (noting that courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party). However, the notion of raising *a claim-processing rule* sua sponte and then summarily dismissing the case based on noncompliance with that rule is troubling.

¶29 In *Day v. McDonough*, 547 U.S. 198, 126 S. Ct. 1675 (2006), the Supreme Court held that federal district courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition. *See Day*, 547 U.S. at 202, 209, 126 S. Ct. at 1679-80, 1684; *accord Davis*, ¶ 24. However, the Court emphasized that "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions" and must "determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred." *Day*,

547 U.S. at 210, 126 S. Ct. at 1684 (internal quotation marks omitted); *accord Davis*,

¶ 24. The Court also noted that it would be an abuse of discretion to override a State's deliberate waiver of a limitations defense. *Day*, 547 U.S. at 202, 126 S. Ct. at 1679.

¶30 Such considerations are equally applicable here. Indeed, as noted above, § 46-17-311(3), MCA, contemplates that failure to timely file the notice of appeal may be excused upon a showing of good cause. Clark, however, was never afforded the opportunity to make such a showing. For that matter, there is nothing in the record to suggest that the District Court provided notice that it was raising the 10-day filing deadline on its own motion; nor is there anything to suggest that the court, having raised the issue sua sponte, considered whether the interests of justice would be better served by allowing Clark's appeal to proceed.

¶31 Again, these omissions by the District Court are not surprising, given the court's "jurisdiction" rationale for dismissing Clark's appeal. Be that as it may, I find Justice Souter's comments in *Bowles v. Russell*, 127 S. Ct. 2360 (2007), to be apt here:

> The District Court told petitioner Keith Bowles that his notice of appeal was due on February 27, 2004. He filed a notice of appeal on February 26, only to be told that he was too late because his deadline had actually been February 24. It is intolerable for the judicial system to treat people this way, and there is not even a technical justification for condoning this bait and switch.

*Bowles*, 127 S. Ct. at 2367 (Souter, Stevens, Ginsburg, & Breyer, JJ., dissenting). Likewise, in the case at hand, the Municipal Court told Clark that his notice of appeal was due on July 28, 2006. He filed his notice of appeal on that date, only to be told by the District Court that he was too late. His appeal was then dismissed by the District

19

Court—sua sponte and based on a claim-processing rule—without fair notice and without an opportunity to make a showing of good cause to excuse his belated filing. I find these circumstances to be of serious concern.

¶32    That said, Clark has not challenged the propriety of the District Court's decision to dismiss his untimely appeal sua sponte. For this reason, I concur in our decision to affirm the District Court. However, I do not believe that our Opinion should be read as condoning sua sponte, without-notice dismissals of untimely appeals.

/S/ JAMES C. NELSON


Justice Brian Morris joins the Special Concurrence of Justice James C. Nelson.

/S/ BRIAN MORRIS