FILED

01/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0317

DA 24-0317

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 12

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID ALAN DAMON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-13-058C
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        David Damon, Self-Represented, Deer Lodge, Montana

      For Appellee:

        Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

        Joshua Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  December 4, 2024

Decided:  January 22, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 David Damon pleaded guilty to a charge of felony incest and was sentenced to fifty years at the Montana State Prison with ten years suspended. As a condition of his sentence, Damon was required to complete Phases I and II of the Prison's sex offender treatment program before he would be eligible for parole. After ten years of waiting for enrollment into Phase II treatment, Damon filed a motion to modify his sentence to allow him to attend a residential sex offender treatment program outside of the Prison. Finding no authority to modify the judgment, the Eighth Judicial District Court denied his motion. Damon appeals. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On July 27, 2012, the Cascade County Sheriff's Office received a report from David Damon's sixteen-year-old daughter (Jane Doe) that Damon had raped her on numerous occasions starting in January of that year. The report indicated that Damon had threatened Jane into remaining silent regarding the sexual assaults, telling her that "something bad would happen" if she told anyone of these encounters. During their initial investigation, detectives discovered through Jane's caseworker that Damon reportedly engaged in sexual conduct with his other daughter (Jill Doe) as well. Damon was arrested in September 2012 and agreed to talk with detectives about the matter. Damon admitted to having sex with Jill on at least nine occasions in Helena and Vaughn, Montana, but denied having sex with Jane, as she was under 18 at the time. Subsequent interviews with Jill confirmed Damon's confession.

¶3    Damon was charged with two counts of felony incest in violation of § 45-5-507(1) and (3), MCA (2011), for his rapes of Jane and Jill and with one count of felony tampering with a witness in violation of § 45-7-206(1)(b), MCA (2011), for attempting to force Jane to withhold information about the incidents. In July 2013, Damon pleaded guilty to the first count of felony incest and accepted a plea agreement that dismissed the other two charges. The Cascade County District Court sentenced Damon in February 2014 to fifty years at Montana State Prison (MSP) with ten suspended and designated him as a Tier II sex offender. The court restricted Damon's parole eligibility until he completed Phases I and II of the sexual offender treatment program (designated by MSP as "SABER (SOP I-III)"). Damon completed Phase I prior to his sentencing hearing and was placed on a waiting list for Phase II.

¶4    In 2017, the Montana Legislature passed Senate Bill 59 (codified in part in § 53-1-211, MCA), which, among other things, required the Department of Corrections (DOC) to establish a quality assurance unit charged with adopting an evidence-based program evaluation tool that measures how closely correctional programs meet the known principles of effective intervention. Section 53-1-211(6)(a), MCA, required the DOC to develop evidence-based curricula to be utilized in programs operated by or under contract with the DOC. The DOC determined that the SABER program in place at Damon's sentencing did not meet the evidence-based curriculum standards. It eliminated SABER (SOP I-III) in 2023. The removal of this program did not leave prisoners without treatment options, however. The evidence-based Sex Offender-Integrated Correctional Program

3

Model (SO-ICPM) was established in its place, with treatment components analogous to the former SABER program in meeting previous sentencing requirements.

¶5 In February 2024, Damon filed a motion to modify the judgment against him. Damon asserted that because SABER SOP treatment no longer was available, he was without any means of satisfying his sentence requirements. Damon sought to enter into a residential sex offender treatment program given the lack of SABER SOP programming available at MSP. On April 17, 2024, the court denied Damon's motion, reasoning that it lacked authority to modify a ten-year-old sentence; that the issue he raised is a parole eligibility problem and not a problem with the sentence; and that any relief would be through the Montana Board of Pardons and Parole (BOPP) or the DOC.

## STANDARD OF REVIEW

¶6 Whether the District Court had legal authority to modify Damon's judgment is a question of law. *State v. Megard*, 2006 MT 84, ¶ 17, 332 Mont. 27, 134 P.3d 90. "We review a district court's conclusions of law and interpretation of statutes de novo for correctness." *State v. Petersen*, 2011 MT 22, ¶ 8, 359 Mont. 200, 247 P.3d 731.

## DISCUSSION

¶7 *Did the District Court erroneously deny Damon's motion to modify his 2014 sentence restricting his parole eligibility until he completed SOP I and II?*

¶8 Appearing on his own behalf in this appeal, Damon asserts that the elimination of SABER SOP treatment leaves him without a way to meet all requirements of his sentence and that this condition of his sentence is thus now erroneous. Damon requests that the Court modify his sentence to allow him to take part in a residential sex offender treatment

4

program to satisfy his sex offender treatment requirement. Damon contends that § 46-18-116(3), MCA, allows a sentencing court to correct a factually erroneous sentence. He points to an August 2023 decision of the Sentence Review Division (SRD), *State v. Purcell* (Cause No. DC-32-2019-0000147-IN), in which the SRD modified the sentence of an offender sentenced to complete Phases I and II of sex offender treatment because the program no longer was offered by the DOC. The State responds that the District Court correctly held that it could not amend a sentence imposed ten years earlier, as there exists no statutory authority for the court to do so.

¶9 Once a valid sentence has been pronounced, the court imposing that sentence has no authority to modify or change it, except as provided by statute. *Megard*, ¶ 17 (citing *State v. Fertterer*, 260 Mont. 397, 400, 860 P.2d 151, 154 (1993)). Section 46-18-116, MCA, provides for the correction of erroneous sentences or judgments. It allows a court to correct a factually erroneous sentence or judgment at any time but otherwise restricts the court's authority to modify a written judgment to within 120 days after its filing, and then only to conform to the oral pronouncement. Section 46-18-116(2)-(3), MCA. The amendment of a factually erroneous sentence may be used only to correct an error on the face of the record, not as a means to revise the sentencing court's adjudications. *Megard*, ¶ 19 (citations omitted). "Illegal sentences must be addressed in the manner provided by law for appeal and postconviction relief." Section 46-18-116(3), MCA.

¶10 Section 46-18-116, MCA, does not apply to Damon's situation. Damon is well beyond 120 days of the filing of judgment, and the DOC's programming change almost

ten years later did not make the sentence factually erroneous. As such, the District Court did not have legal authority to amend Damon's sentence or modify the judgment.

¶11 Damon maintains that the *Purcell* Sentence Review decision demonstrates the illegality of his sentence, as the SRD determined that the imposition of a now-impossible SOP treatment requirement constituted an illegal sentence. But the *Purcell* decision does not help him. First, the modification was made on a timely application to the SRD, which Damon cannot utilize. *See* § 46-18-903, MCA (allowing applications for sentence review within 60 days from the date the sentence was imposed). Second, subsequent developments relating to SOP treatment have rendered the *Purcell* decision obsolete.

¶12 Damon attaches to his Opening Brief a chart published by the Department of Corrections, labeled "MDOC SABER (SOP I-III) TO SO-ICPM CROSSWALK." It explains how the three phases of the former SABER program are implemented in the SO-ICPM, implemented in November 2023, three months after *Purcell*. The "Crosswalk" explains that SOP [Phase] I–Psychoeducational Component is equivalent to "SO-ICPM Primer;" SOP [Phase] II–Cognitive Behavioral Treatment is equivalent to "SO-ICPM Moderate or High Intensity;" SOP III–Aftercare is equivalent to "SO-ICPM Maintenance." As such, an offender sentenced to complete SOP I and II will meet his sentence requirements by completing the analogous SO-ICPM phase. The document also states that "[o]nce the need for programming is determined, an individual will be put on the waitlist for the appropriate program track. Program track placement is prioritized based on parole eligibility and discharge date."

6

¶13 Damon presents the same issue we considered on a recent petition for writ of habeas corpus, *Patterson v. Salmonsen*, No. OP 24-0045, 2024 Mont. Lexis 390, Order (Apr. 9, 2024). In his petition, Patterson argued that the decision in *Purcell* rendered illegal his sentence requiring completion of Phases I and II of sex offender treatment; he requested to be released to a pre-release center in lieu of the original sentence requirement. We noted the DOC's acknowledgment that inmates with sentences requiring SOP treatment may utilize the SO-ICPM programming model to meet their sentence requirements, which ultimately did not make such a sentence illegal. Damon included with his reply brief a letter from BOPP Member Brad Newman explaining that a "reasonable interpretation of your existing judgment . . . requires you to complete the equivalent of SOP I and II programming before you become parole eligible." Newman advised Damon that "[t]he determination of what programming constitutes the equivalent of SOP I and II is left to MSP's professional treatment staff" and that the BOPP "has no authority to ignore the parole restriction" the sentencing court imposed.

¶14 We agree. The condition of Damon's sentence is not impossible to fulfill. Instead, MSP has simply adopted changes in its sex offender programming, which is in its discretion. *See* § 46-18-207, MCA (referring to "the prison's sexual offender treatment program"). Damon remains on the waitlist because of the length of his sentence. Given MSP's continuation of treatment programs that satisfy a sex offender treatment requirement, Damon's 2014 sentence is not illegal.

¶15 Finally, the relief Damon sought cannot be granted by the District Court. Damon cites § 46-18-207(4)(a)-(b), MCA, to support his request to enter residential sex offender treatment rather than wait to enroll in the SO-ICPM programming model. That section reads in pertinent part:

> (a) . . . during an offender's term of commitment to the department of corrections or a state prison, the department may place the person in a residential sexual offender treatment program approved by the department under 53-1-203.
>
> (b) If the person successfully completes a residential sexual offender treatment program approved by the department of corrections, the remainder of the term must be served on probation unless the department petitions the sentencing court to amend the original sentencing judgment.

Section 46-18-207(4)(a), (b), MCA. As outlined in subsection (a), any request to be placed in a residential treatment program must be made through the DOC, not the District Court. Because this statute does not authorize the court to approve placement in a residential sex offender treatment program, it correctly declined to do so.

## CONCLUSION

¶16 The District Court's order denying Damon's motion to modify his sentence is affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE